[Civ. No. 10558.   Third Dist.   May 6, 1963.]

LAWRENCE H. COOMES, Plaintiff and Appellant, v. STATE PERSONNEL BOARD et al., Defendants and Respondents.

Donald A. Peters for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and Willard A. Shank, Assistant Attorney General, for Defendants and Respondents.

FRIEDMAN, J.—Appellant Coomes, a civil service psychiatric technician at Camarillo State Hospital, became involved in a struggle with a patient named Osborne. Two other psychiatric technicians, Havener and Miles, were also participants. All three employees were dismissed. The dismissal notices alleged that the respective employees "did physically beat and did assist in physically beating" Osborne. The three employees appealed to the State Personnel Board and hearings were had before the board's hearing officer.

After taking evidence the Personnel Board adopted a decision in the Coomes case finding that "while on duty as a Psychiatric Technician at the Camarillo State Hospital, appellant participated in the physical beating of a patient and inmate of said hospital, to wit, one William Pinkson Osborne, by holding and restraining said patient while he was being struck and beaten by another employee." The decision concluded that Coomes' conduct violated rule 84 of the Department of Mental Hygiene,[1] constituted insubordination and willful disobedience within the meaning of Government Code section 19572,[2] and sustained his dismissal. Parallel decisions were made as to Havener and Miles. In the former's case the proposed decision recited a finding that the employee had willfully and intentionally struck Osborne with his fists. Miles was found to have attempted to strike the patient with his knee while he was held by Coomes and hit by Havener.

The three employees then requested a rehearing, which was ordered by the State Personnel Board. Testimony of additional witnesses was taken. The dismissals were confirmed and the three employees then petitioned the superior court

[1]Rule 84, Rules and Regulations for All Employees, provided: "*Employee Treatment of Patients* No employee shall strike, abuse or mistreat a patient. No abusive language of any kind shall be used. The use of physical strength to secure the cooperation of the patients is to be undertaken only to the extent necessary to insure the safety and comfort of the patients. Sufficient assistance should be had from other employees so that injury to patients and employees can be avoided. Any employee violating this rule shall be subject to disciplinary action." The rule was well known to the employees.

[2]At the time of the Personnel Board's action, "insubordination" and "willful disobedience" were specified as causes for discipline by subdivisions (f) and (p) of Government Code section 19572. A later amendment placed these grounds of discipline in subdivisions (e) and (o), respectively. (Stats. 1961, ch. 293.)

for a writ of mandate. That court found that the findings of insubordination and willful disobedience were supported by substantial evidence and denied the writ. All three employees filed notices of appeal to this court. Subsequently Havener and Miles abandoned their appeals. Coomes' principal contentions on appeal are: that the findings were not supported by substantial evidence and that the dismissal decision is not supported by the findings. We do not consider the propriety of the orders sustaining Havener's and Miles' dismissals.

■ The trial court's function was to review the transcript of the State Personnel Board hearings to determine whether the board's findings were supported by substantial evidence. (*Shepherd* v. *State Personnel Board*, 48 Cal.2d 41, 46-47 [307 P.2d 4]; *Genser* v. *State Personnel Board*, 112 Cal.App.2d 77, 80 [245 P.2d 1090].) ■ The substantial evidence rule is equivalent to the concept of " 'substantial evidence in the light of the whole record.' " (*Martin* v. *Alcoholic Beverage etc. Appeals Board*, 52 Cal.2d 238, 246 [340 P.2d 1]; *Argonaut Ins. Exchange* v. *Industrial Acc. Com.*, 49 Cal.2d 706, 713 [321 P.2d 460].) ■ In this kind of proceeding the role of the appellate court is to ascertain whether the administrative record embodies substantial evidence to support the findings of the administrative agency and of the trial court. (*Borders* v. *Anderson*, 204 Cal.App. 2d 401, 410 [22 Cal.Rptr. 243]; *Greenblatt* v. *Martin*, 189 Cal.App.2d 787, 789, 790 [11 Cal.Rptr. 669]; *Fromberg* v. *Department of Alcoholic Beverage Control*, 169 Cal.App.2d 230, 232 [337 P.2d 123].)[3]

■ As revealed by the transcript of evidence before the State Personnel Board, the facts are essentially as follows: On a particular morning Mrs. Wilkinson, superintendent of nursing services at the state hospital, received a complaint from patient Wolfe, who reported abuse of patient Osborne the previous evening in the dayroom of ward 6A. Mrs. Wilkinson assured Wolfe that "action would take place." She called other hospital officials, who examined Osborne and found no sign of physical injury. She then interviewed patients Garcia, Lindsay and Rivas. Garcia and Lindsay related the incident to her but Rivas said he had been in the

---

[3]Cf. *Takata* v. *City of Los Angeles*, 184 Cal.App.2d 154, 159 [7 Cal. Rptr. 516], indicating that the appellate court will not "reweigh" the evidence and is limited to ascertainment of substantial evidence to sustain the trial court findings. Actually, in reviewing decisions of "quasi-judicial" agencies, both trial and appellate courts are applying the same review standard to the same body of evidence.

bathroom shaving and had not seen the incident. Wolfe and Lindsay were mentally ill patients. Hospital records described them as afflicted with "schizophrenic reaction, chronic undifferentiated type," and Wolfe had the additional diagnosis of "neurological brain disease associated with intoxication." Rivas and Garcia had been committed for narcotics addiction.

After interviewing these patients Mrs. Wilkinson submitted a written report to the associate superintendent of the hospital and to the personnel officer. The associate superintendent then interviewed these and other patients. On the following day Havener, Miles and appellant Coomes were called to the associate superintendent's office and given notices of suspension pending disciplinary action. The employees had not been interviewed and had no prior knowledge of accusations against them.

At the hearing Wolfe and Lindsay described the incident. Three other patients, Bauman ("schizophrenic reaction, paranoid type"), Barber (same diagnosis) and Gutierrez ("schizophrenic reaction, chronic undifferentiated type") also described the occurrence, which had taken place about 7 o'clock in the evening in the dayroom of ward 6A. About 50 patients were in the room, most of them watching television. Attendants on duty were Coomes, Havener and Miles, all of whom were in a small office adjoining the dayroom. Coomes was the senior attendant. Osborne, a patient in his early twenties, became upset after some words with a patient named Feliciano. Osborne picked up a wooden ash stand and waved it at Feliciano. He then smashed the ash stand against the floor and brandished it in the air as a club. Feliciano picked up a chair and held it before him for protection. Hearing the disturbance, Havener and Coomes came toward Osborne. Coomes stepped behind him and put his arm around Osborne's neck or upper chest, in a hold which was variously described as a headlock or necklock. According to the patients, Havener then started to hit Osborne in the area of the upper abdomen. Several of the patients described an attempt by Miles to kick or knee the patient in the stomach or groin. None of these patients testified to any blows by Coomes.

Coomes testified that he heard a crash and saw Osborne waving the ash stand in Feliciano's direction; that Osborne did not put the ash stand down when told to do so by Havener; that he then got behind Osborne and applied a neckhold

to the patient (apparently with the inner elbow held beneath the patient's chin) ; that he was trying to prevent Osborne from harming himself or others. Havener testified that he was trying to grasp the patient's left arm and hand. Miles testified that he saw Coomes and Havener struggling to get the ash stand away from Osborne and that he tried to grasp Osborne's right arm. All three employees denied any mistreatment of the patient.

Most of the witnesses agreed that Osborne subsided and walked from the room erect and unassisted, with an attendant at either side. According to the attendants, the whole affair took 10 to 15 seconds. Patients' estimates of the time span ranged from "not over a minute" to five minutes. Testimony of hospital personnel indicated that Osborne was known as a disturbed patient who had frequent altercations with other patients. After the incident he received a tranquilizing injection and was later transferred to a ward for acutely disturbed patients.

In the light of these facts we appraise the evidentiary support for Coomes' dismissal. Preliminarily, we turn to Government Code section 19572, subdivisions (e) and (o). The former specifies "insubordination" as a ground for discipline, the latter "willful disobedience." The two terms overlap. So far as they are distinguishable, dictionary definitions indicate that disobedience connotes a specific violation of command or prohibition, while insubordination implies a general course of mutinous, disrespectful or contumacious conduct. In the statute, the term "disobedience" is modified by the adjective "willful," but the ground of insubordination is without a modifying adjective. Still, the latter term carries a volitional coloration which excludes the notion of accidental or even negligent conduct. ▉ A proper construction of section 19572 impels the view that insubordination, equally with willful misconduct, requires proof of intent or willfulness. The latter elements imply that the person knows what he is doing and intends to do what he is doing. (See *In re Trombley,* 31 Cal.2d 801, 807 [193 P.2d 734] ; *People* v. *McCree,* 128 Cal.App.2d 196, 202 [275 P.2d 95].)

▉ Thus, in order to justify disciplinary action under either subdivision of section 19572, State Personnel Board findings must rest upon evidence of intentional or knowing conduct. Evidence which fails to establish willfulness, knowledge or intent lacks an indispensable element for proof of guilt and is not substantial. ▉ Precisely at this point the

evidence in this case fails completely to establish *knowing* insubordination or *willful* misconduct on the part of appellant Coomes.

Operation of institutions for the care and treatment of the mentally ill occasionally demands reasonable restraint of patients. A disturbed patient may indulge in an outburst of aggressive action, threatening harm to himself, to other patients, or to hospital personnel or property. Enlightened standards decry brutality, but allow for such reasonable degree of force as may be necessary to maintain safe, peaceable conditions. Further, as we understand the matter, modern therapeutic standards reject use of advance restraints upon persons whose condition permits adaptability to group living. We no longer chain mental patients to the wall. Comparative freedom allowed the patient imposes a corresponding responsibility upon hospital personnel when confronted with emergency situations involving outbursts of aggressive behavior. The personnel must be ready to apply a degree of superior strength in order to restore quiet and safety.

These truisms are implicitly recognized by rule 84 of the rules for employees adopted by the Department of Mental Hygiene (quoted in footnote 1, *supra*). Within, and only within, "the extent necessary to insure the safety and comfort of the patients," the rule permits use of physical strength. The rule recognizes that prevention of injury to the employees, as well as patients, is a proper objective. Certain kinds of force (striking, abuse and mistreatment) are unconditionally prohibited. Outside these positive prohibitions, the permissibility of force is a matter of degree, that is, it must be reasonably adapted to the situation. A person whose duties embroil him in an emergency cannot weigh his acts with all the nice discrimination available to hindsight. There are cases where the exercise of superior force passes by gradations from passive restraint, at one extreme, to brutality at the other. There is nothing subtle, however, about the difference between the extremes. It is usually quite apparent.

Such general considerations are coupled with recognition of the extreme public distaste generated by any brutality in mental institutions. Hospital administrators are justifiably alert to prevent brutality and sensitive to possibilities of publicity and criticism. Rash disciplinary action may be the unconscious response to such possibilities. Fear of public criticism, however, should not make scapegoats of hospital employees whose skills and efforts are all-important in the treat-

ment of patients. Administrative machinery, set into motion, is hard to stop. ■ Institution of disciplinary action against employees, based entirely on accusations by mental patients, and without even interviewing the employees themselves, should stimulate close scrutiny on the part of reviewing tribunals. Personnel agencies no less than the courts must be alert to the possibility of unfairness. We make these observations because the evidence against Coomes blatantly and patently fails to demonstrate culpability.

In applying a neckhold or chinhold to a disturbed patient who was threatening another patient with a club, Coomes was doing nothing more and nothing other than he was supposed to do. If the evidence showed that he had grasped an aggressive patient as he did, while a companion attendant restrained the patient's left arm and another the right, the case would have amounted to nothing more than a routine instance of reasonable restraint. Here, however, the evidence tends to show that the companion attendants were applying excess or improper force. Their actions impose no culpability on Coomes in the absence of evidence that he knowingly held the patient as their target. There was no evidence of a preconceived plan to subject this particular patient to blows or kicks, no evidence of any habitual or expected course of improper controls, and no evidence that Coomes continued to hold the patient after he became aware of blows inflicted by the others. Except for one patient whose estimate of time was understandably cloudy, most witnesses agreed that the affair was of extremely short duration. Coomes himself testified that he was behind the patient; that he saw no blows; that his vision was obstructed by the patient's body. Coomes' interest in the outcome might have evoked skepticism in the trier of fact; yet there was no other evidence to fasten him with guilty knowledge.

Under these circumstances the State Personnel Board made the key finding that Coomes had ''participated in the physical beating of a patient . . . by holding and restraining said patient while he was being struck and beaten by another employee.'' That finding must rest on evidence of knowing or intentional participation; otherwise it cannot support a conclusion of insubordination or willful misconduct. Since the evidence fails utterly to supply the element of knowing or intentional participation by Coomes, the State Personnel Board's finding was without substantial evidentiary support.

After making the finding, the State Personnel Board

granted a further hearing at the request of the three employees. At the additional hearing Osborne, Feliciano and Rivas were the principal witnesses. Neither Osborne nor Feliciano could remember any blows. We do not mention this fact in order to review credibility, which was for the State Personnel Board as the trier of fact. (*Southern California Jockey Club* v. *California etc. Racing Board,* 36 Cal.2d 167, 177 [223 P.2d 1].) We simply note that their testimony added nothing to the evidence against Coomes. Rivas, however, gave a vivid ''eyewitness'' account. He described blows inflicted on Osborne, including one punch delivered by Coomes before the latter grabbed the patient by the neck. In this connection Rivas' testimony was at odds with that of all other witnesses. It was also at odds with his own statement to Mrs. Wilkinson that he had been shaving and had not seen the incident at all. He readily admitted having been committed as a narcotic addict.

Rivas' testimony, credible or not, played no role in the State Personnel Board's finding as to Coomes. That finding, reciting Coomes' participation in a beating by holding the patient while another struck him, had already been made. Notwithstanding Rivas' account of a punch by Coomes, the State Personnel Board simply reiterated its finding that Coomes had held the patient while another struck the blows. It is evident, then, that the board itself did not accept Rivas' testimony. As to Coomes, the taking of additional testimony added nothing to the record. It lacked substantial evidence before the additional hearing and it lacked it afterward.

Counsel for appellant contends that the State Personnel Board erred in permitting mentally ill patients to testify without preliminary inquiry as to their competency, in violation of the rule announced in *People* v. *McCaughan,* 49 Cal. 2d 409 [317 P.2d 974]. Counsel also contends that the witnesses were not only unreliable in view of their psychotic, delusional and in some cases hostile state, but also because several of the patient-witnesses were fastened with a plot, captained by Wolfe, to ''get'' the attendants. It is generally said that credibility of the witnesses is solely for the administrative agency and cannot be considered by the appellate court. (See, however, Davis, Administrative Law Treatise, vol. 4, pp. 143-149.) It is interesting to speculate what opportunities for review might be available ''in the light of the whole record'' when lack of credibility appears *on the record.* Such opportunities might be augmented by recognition of the

fact that the administrative agency which conducts hearings through a hearing officer has no more opportunity, and less experience, than the courts in gaging the credibility of witnesses. Suffice it to say that we do not pass on the credibility of the evidence in this case, but only on the utter absence of an indispensable element in the evidence.

The judgment is reversed as to appellant Coomes. The court below is directed to issue a writ of mandate directing the State Personnel Board to annul appellant's dismissal and to reinstate him to his position.

Pierce, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied May 29, 1963, and respondents' petition for a hearing by the Supreme Court was denied July 3, 1963. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.