[Civ. No. 16892. Third Dist. Oct. 15, 1979.]

WILLIAM ROBINSON, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
DAVID E. JANSSEN, as Director, etc., Real Party in Interest and
Respondent.

## COUNSEL

Loren E. McMaster and Philip E. Callis for Plaintiff and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, and Carol Hunter, Deputy Attorney General, for Defendant and Respondent, and Real Party in Interest and Respondent.

## OPINION

**BLEASE, J.**—Following our opinion in this matter, filed February 2, 1978, the Supreme Court granted a hearing and, on January 24, 1979, retransferred the case to this court for reconsideration in light of *Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552 [150 Cal.Rptr. 129, 586 P.2d 162].

Plaintiff appeals from the judgment of the Sacramento County Superior Court affirming the decision of the State Personnel Board sustaining the dismissal of plaintiff as an employee of the State of California following his refusal to attend a meeting with his superiors without the presence of a union representative.

Plaintiff contends he was dismissed in violation of his statutory right to the presence of a union representative and that his remedy is reinstatement.

We conclude that a state employee has a right to union representation at a meeting with his superiors held with a significant purpose to

investigate facts to support disciplinary action and may not be dismissed for attempted exercise of that right. We further conclude that the State Personnel Board failed to make findings with respect to the purpose of the purported meeting and the disciplinary effect of the plaintiff's claim to representation. Accordingly, we reverse the judgment and remand the case to the superior court with appropriate directions.

I

Plaintiff, William Robinson, was a permanent employee of the California Department of General Services, Buildings and Grounds Division. The course of plaintiff's employment as a janitor was marred by complaints about his work.

On Friday, August 13, 1976, plaintiff was absent from work without informing his supervisor of the reason. When plaintiff returned to work on Monday, August 16, 1976, he went to Lands, the next higher supervisor above his supervisor, Kolensky, to explain his absence as necessary to visit a sister-in-law in San Francisco who had taken an overdose of pills. During the discussion with Lands, Kolensky arrived and handed plaintiff a "counseling memorandum" informing him that he should call his supervisor before an absence and that any further absences or tardiness could lead to more serious action against him. Plaintiff refused to accept the memorandum and stated that if there were any further problems his supervisor should go see his union representative. Approximately one-half hour later, plaintiff was handed a second "counseling memorandum" for refusing to accept the first memorandum and for becoming hostile when handed it. Plaintiff also refused to accept this memorandum and continued in his work. About two hours later, plaintiff became involved in a dispute with his supervisor about whether he should wax a floor. Plaintiff, despite his supervisor's claim that the floor was slippery and needed waxing, stated that he would not wax the floor because he had waxed it the previous Thursday. Plaintiff then returned to Lands' office and indicated in a heated discussion that he would not wax the floor and wished to be sent home. Lands stated that the decision was Kolensky's and that if Kolensky wanted to send him home he could. Kolensky told plaintiff to go back to work but plaintiff refused to do so and left stating he didn't care about anything.

Plaintiff was absent from work the next day on the ground of illness, but the record reveals that plaintiff worked for another employer that morning (plaintiff worked for the state from 5 p.m. to 1 a.m.) and plaintiff

testified that the reason he did not go to work was that he was afraid of being fired.

Plaintiff returned to work on August 18 and was then apparently asked to go to the building manager's office to discuss his problems. A "counseling memorandum" was prepared in anticipation of the meeting which stated that should the plaintiff's attitude not improve immediately "punitive action will be justified." Plaintiff told Kolensky that he would not go to the office and discuss his problems without his union representative. Plaintiff then went to the building manager's office, repeated his position to Roberts, the building manager, and although he indicated that the union representative would call the building manager either "tomorrow or later," he told Roberts he would not discuss anything further.

Plaintiff was then dismissed effective immediately, but through the efforts of the union representative was able to work through August 30. A hearing before the State Personnel Board held that the dismissal was proper.

Subsequently, plaintiff sought a writ of mandate to compel his reinstatement, but the Sacramento County Superior Court refused to issue the writ and affirmed the decision of the State Personnel Board. Plaintiff appeals from the decision of the superior court.

## II

Plaintiff contends that he was dismissed because of his insistence on the presence of a union representative at the August 18 meeting with his supervisors.

The State Personnel Board upheld the dismissal on the ground that plaintiff's employment history (described in the board's findings of fact) "clearly constitute[d] insubordination, inexcusable absence without leave and other failure of good behavior within the meaning of Subsections e, j and t of Section 19572 of the Government Code. His dismissal was fully warranted and his appeal should be denied." There can be no reasonable argument with the conclusion that plaintiff's employment history gave his superiors good cause to terminate his employment. However, if Robinson had a right to union representation and was dismissed for his attempted exercise of the right, his dismissal is invalid. (Gov. Code, § 3531.)

■ The threshold issue is whether a state employee is entitled, under the state employee organizations law* (Gov. Code, § 3525 et seq.) to the presence of a union representative during a meeting held with a significant purpose to investigate grounds for disciplinary action.

In *Civil Service Assn.* v. *City and County of San Francisco, supra,* 22 Cal.3d 552, the California Supreme Court held that the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) granted a local government employee the right, upon request, to the participation of a union representative during an investigatory interview held prior to imposition of a short-term suspension. The court found the right contained within the provisions of Government Code sections 3503 and 3504. Government Code section 3503 provides that: "Recognized employee organizations shall have the right to represent their members in their employment relations with public agencies." Included within such "employment relations" are matters relating to "wages, hours and other terms and conditions of employment . . . ." (Gov. Code, § 3504.) The court asserted that the section 3504 language "seems to be taken from the federal Labor Management Relations Act," noted its "sensitivity to developments in the federal law in interpreting state legislation," and reasoned as follows:

"Under the provisions of section 7 of the National Labor Relations Act,[11] an employee is entitled to the presence of his union representative during an investigatory interview according to recent United States Supreme Court cases. (*NLRB* v. *Weingarten, Inc.* (1975) 420 U.S. 251 [43 L.Ed.2d 171, 95 S.Ct. 959]; *Garment Workers* v. *Quality Mfg. Co.* (1975) 420 U.S. 276 [43 L.Ed.2d 189, 95 S.Ct. 972].) We note that in *Weingarten* the United States Supreme Court speaking through Justice Brennan stated (420 U.S. 260-263 [43 L.Ed.2d 179-181]): 'The action of an employee in seeking to have the assistance of his union representative at a confrontation with his employer clearly falls within the literal wording of § 7 that "[e]mployees shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection." *Mobil Oil Corp.* v. *NLRB,* 482 F.2d 842, 847 (CA7 1973). This is true even though the employee alone may have an immediate stake in the outcome; he seeks "aid or protection" against a perceived threat to his employment

---

*The state employee organizations law has been replaced by the State Employer-Employee Relations Act, operative July 1, 1978. (Stats. 1977, ch. 1159). However, the provisions applied in this case, contained in Government Code sections 3527, 3529 and 3531, have been carried over intact into the new law.

[11]Section 7 confers the right of the employees 'to engage in . . . concerted activities . . . for mutual aid or protection.' "

security. The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly.

" '.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

" 'The Board's construction also gives recognition to the right when it is most useful to both employee and employer. A single employee confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors. A knowledgeable union representative could assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview. Certainly his presence need not transform the interview into an adversary contest. Respondent suggests nonetheless that union representation at this stage is unnecessary because a decision as to employee culpability or disciplinary action can be corrected after the decision to impose discipline has become final.' " (*Civil Service Assn.* v. *City and County of San Francisco, supra,* 22 Cal.3d at p. 567.)

The State Employee Organizations Act, applicable to this case, tracks the language relied upon in the Meyers-Milias-Brown Act. Government Code section 3528 provides, as does Government Code section 3503, that: "Employee organizations shall have the right to represent their members in their employment relations . . . with the state." Government Code section 3529 defines, as does Government Code section 3504, the scope of representation to include all matters relating to "wages, hours, and other terms and conditions of employment."

The studied congruence in the quoted sections leads directly to the conclusion that the meaning attributed by *Civil Service Assn.* to the Meyers-Milias-Brown Act must also be attributed to the State Employee Organizations Act. And the rulings of *NLRB* v. *J. Weingarten, Inc.* (1975) 420 U.S. 251 [43 L.Ed.2d 171, 95 S.Ct. 959] and its progeny are persuasive in interpreting Government Code sections 3528 and 3529.

The respondent claims that the analogy to federal labor law is weak because the California law does not contain the "mutual aid" provisions of section 7 of the National Labor Relations Act relied upon in *Weingarten* and quoted in *Civil Service Assn.* v. *City and County of San*

*Francisco, supra,* 22 Cal.3d at p. 567. Respondent is correct that California law does not as such contain section 7 of the National Labor Relations Act. Nonetheless, the California law has imbibed the federal policy, *as it applies to the scope of representation,* through adoption of the federal language. "The phrase 'wages, hours, and other terms and conditions of employment' is taken verbatim from the LMRA, where it has been given a generous interpretation, including almost anything that might affect an employee in his employment relationship." (Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 749, fns. omitted (cited with approval in *Civil Service Assn., supra,* at p. 566 of 22 Cal.3d, and in *Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391 [113 Cal.Rptr. 461, 521 P.2d 453]).) The inclusion of investigatory meetings within the scope of representation is in keeping with the generous interpretation accorded to the federal language.

The *Weingarten* rule has most recently been explored in *Alfred M. Lewis, Inc.* v. *N.L.R.B.* (9th Cir. 1978) 587 F.2d 403. We adopt its reasoning in interpretation of the California law.

"Whether an investigatory interview may lead to disciplinary action is an objective inquiry based upon a reasonable evaluation of all the circumstances, not upon the subjective reaction of the employee. [*NLRB* v. *J. Weingarten, Inc.* (1975) 420 U.S. 251, 257 fn. 5 (43 L.Ed.2d 171, 95 S.Ct. 959, 964).] The court in *Weingarten* quoted with approval the NLRB's statement that '[w]e would not apply the rule to such run-of-the-mill shop-floor conversations as, for example, the giving of instructions or training or needed corrections of work techniques. In such cases there cannot normally be any reasonable basis for an employee to fear that any adverse impact may result from the interview, and thus we would then see no reasonable basis for him to seek the assistance of his representative.' *Id.,* at 257-58, 95 S.Ct. at 964, quoting *Quality Manufacturing Co.,* 195 N.L.R.B. 197, 199 (1972). It should be acknowledged that a supervisory interview in which the employee is questioned or instructed about work performance inevitably carries with it the threat that if the employee cannot or will not comply with a directive, discharge or discipline may follow; but that latent threat, without more, does not invoke the right to the assistance of a union representative. The right of representation arises when a significant purpose of the interview is to obtain facts to support disciplinary action that is probable or that is being seriously considered." (*Alfred M. Lewis, Inc.* v. *N.L.R.B., supra,* 587 F.2d at p. 410.)

## III

■ The factual issues in this case are whether the meeting of August 18, 1976, was held for a significant investigatory purpose (which would justify the presence of a representative) and, if so, whether the refusal of Robinson to participate in the meeting without a union representative was a basis for the dismissal action taken by his superiors.[1]

This case turns upon the purposes to be ascribed to the meeting sought with the plaintiff by his supervisors on August 18, 1976, and to the suspension action taken on that date. The State Personnel Board found that on August 18, "the appellant was told to report to the Building Manager's office to discuss his absence without leave and other problems. The appellant stated that he would not talk to anybody without his union representative being present. At this point he was relieved of duty and eventually terminated."

Being "relieved of duty" is, of course, a suspension from work, disciplinary action in and of itself. The disciplinary action was taken at the precise "point," according to the State Personnel Board finding, at which the request for representation occurred. It can be inferred from this finding that the request for union representation at the meeting was a proximate cause of the dismissal. This inference is supported in the record. A "counseling memorandum" was prepared by Robinson's supervisors in anticipation of the August 18 meeting. It contains, under employee's statement, Robinson's superior's reaction to his refusal. "Employee blatantly refused to discuss with me anything regarding his behavior, actions or Job performance. I stated to Mr. Robinson, If this is your attitude, you are relieved of your duties as a Janitor assistant with the State of Calif. Turn in your ID Badge and clothing and leave the premises." Plaintiff's superiors prepared a memorandum to the file, dated the following day, August 19, 1976. It details Robinson's request that he had nothing to say until the union representative was present. It sets forth the response of his superiors as follows: "I said, 'Mr. Robinson, under the circumstances, you are hereby relieved of your duties as a Janitor Assistant with the State of California for blatant insubordination and are

---

[1]We are not called upon in this case to determine whether the right to the presence of a union representative may be exercised only at the instance of the union. (See Gov. Code, § 3528.) There has been no showing made that a union representative was not to be made available to the plaintiff. Rather, the record does show the union representative was made available following the disciplinary action and that such representation enabled the plaintiff to continue to work to August 30. Moreover, Government Code section 3528 authorizes an employee to appear on his own behalf or through his chosen representative notwithstanding the unavailability of the union representative.

hereby notified to turn in your ID badge and clothing to your Supervisor and leave the State premises. You will be notified in writing at the prescribed time.' "

Robinson had a right to refuse the meeting without a union representative if a significant purpose of the meeting was to investigate facts in relation to the contemplated disciplinary action. The "counseling memorandum" prepared in anticipation of the August 18 meeting states: "After reviewing the above Counseling Reports, we feel the State of California is not getting sufficient returns from your services to compensate for the amount of training and supervision we are expending on you. Therefore, should your performance, attendance and attitude not improve immediately, we feel punitive action will be justified to prevent you from damaging your future with the State of California beyond reconciliation."

The memorandum reveals two facts. First, punitive action was certainly in the minds of Robinson's superiors. The purpose of the August 18 meeting was to elicit a response from Robinson, the nature of which constituted a fact in the minds of his superiors upon which disciplinary action hinged. Second, the disciplinary action contemplated was *not* dismissal; otherwise, it was not the kind which would prevent Robinson from damaging his future with the State of California. Only a dismissal would fall under that category. It can be inferred from this that it was the events of August 18 which transformed a possible less-than-dismissal action in the minds of Robinson's superiors into the dismissal action reviewed in this case.

On this record the State Personnel Board *could have* found, and the evidence would support the finding, that a significant purpose of the August 18 meeting was disciplinary and that the events of August 18 transformed the contemplated disciplinary action into a dismissal. The State Personnel Board made no such findings, nor the contrary findings, apparently because it did not consider them to be relevant to its determination even though the issue had been raised with it by Robinson's counsel.

Such findings are necessary to a final resolution of this case. ■ "In this kind of proceeding the role of the appellate court is to ascertain whether the administrative record embodies substantial evidence to support the *findings* of the administrative agency and of the trial court." (*Coomes* v. *State Personnel Board* (1963) 215 Cal.App.2d 770, 773 [30 Cal.Rptr. 639].) (Italics added.) The State Personnel Board is, of course, required to make findings under the provisions of Government Code

section 18682. A failure to make the findings justifies an appropriate remand. (*Webb* v. *State Personnel Board* (1971) 16 Cal.App.3d 542, 549 [94 Cal.Rptr. 115].)

This case arose in the trial court under the aegis of Code of Civil Procedure section 1094.5. The determinations of the State Personnel Board, a statewide agency, deriving its power from the state Constitution, are reviewable only under the substantial evidence test. (*Martin* v. *State Personnel Bd.* (1972) 26 Cal.App.3d 573, 577 [103 Cal.Rptr. 306].) Nonetheless, "[a]lthough the agency action is reviewed by the test which determines the existence or absence of substantial evidence to support the agency findings, 'implicit in [Code of Civil Procedure] section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order.' (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* [(1974)] 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12].)" *Los Alamitos Gen. Hosp., Inc.* v. *Lackner* (1978) 86 Cal.App.3d 417, 425 [149 Cal.Rptr. 98]. ▆ Where, as here, the absence of a crucial finding results in such an analytic gap, the appellate remedy is an appropriate remand.

The critical findings are, in the first instance, for the State Personnel Board to make.

Accordingly, the judgment is reversed and the case remanded to the trial court with directions to issue its peremptory writ of mandate ordering the State Personnel Board to vacate its decision subject to its right to further review of the existing record and to make findings as to the investigatory purpose of the August 18 meeting and as to the relationship of the plaintiff's request for union representation to the agency's decision to terminate the plaintiff and to render a decision consistent with this opinion.

Regan, Acting P. J., concurred.

**EVANS, J.**—I concur in the majority's general discussion on the present state of the law pertaining to employee rights but dissent from the factual conclusions therein reached. In this instance I view the circumstances giving rise to the preparation of the refused counseling memorandum and the request that the employee counsel and confer with his employer as related to job performance, not to threatened or anticipated discipline.

Contrary to plaintiff's contention, no right to union representation is vested in the employee pursuant to Government Code sections 3527 and 3528 during normal inquiries or interviews relating to job performance, even though the employee may fear discipline may be imminent as a result of his job performance.

In *Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382 [113 Cal.Rptr. 461, 521 P.2d 453], the Supreme Court, while acknowledging the employee's right to union representation at an employer-employee investigatory inquiry, limited that right to circumstances, not involving "a normal interview with regard to employment matters." (*Id.*, at p. 392.)

Here, the interview requested by the building manager with Robinson and his supervisor related to normal employment matters regarding plaintiff's job performance; the subject matter did not contemplate a discussion, interrogation, or investigation relating to any possible discipline of Robinson; only investigations into conduct for purposes of imposing discipline afford the employee the right to union representation during those interviews. (*Ibid.*)

In sum, the employer's intention here was to interview and discuss normal employment matters, i.e., job performance and attitude; it was not intended as an investigation of the employee's activities for purposes of imposing discipline. Such normal employment-related discussions or interviews, as contrasted to investigations of employee conduct, even though discipline although not contemplated by the employer may have been feared by the employee, do not vest the employee with a right to union representation at the employment-related interview. (Gov. Code, § 3500 et seq.; *Social Workers' Union, Local 535* v. *Alameda County Welfare Dept., supra,* 11 Cal.3d at pp. 386-392; *Mobil Oil Corporation* v. *N.L.R.B.* (7th Cir. 1973) 482 F.2d 842.)

I have arrived at my conclusion, having considered the discourse on the various rights of public employees contained in *Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552 [150 Cal.Rptr. 129, 586 P.2d 162], and concur with the court that in cases of public employment, the employee is entitled to due process in matters involving contemplated discipline. The question is what process is due? In *Civil Service Assn.,* the court did not deem the prediscipline rights established in *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], to be

applicable in matters relating to minor disciplinary action. That conclusion is also compelled, where, as here, discipline, either actual or threatened, was not contemplated. At the time when representation was claimed by the employee and not afforded, the employer was attempting only to get the recalcitrant employee into a counseling session for analysis of his conduct and direction as to future performance. At that time *Skelly* mandated due process (presence of counsel) was not required. However, it is acknowledged that the Legislature has extended the right to representation to include the presence of union representatives at investigational confrontations by the enactment of the Meyers-Milias-Brown Act. (See Gov. Code, §§ 3502, 3504.) The purpose of such procedure was succinctly stated in *NLRB* v. *Weingarten, Inc.* (1975) 420 U.S. 251, 260-261 [43 L.Ed.2d 171, 180, 95 S.Ct. 959], to be that, "The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a *practice of imposing punishment unjustly.*" (Italics ours.) In *Civil Service Assn.*, the California Supreme Court extended the right to union representation in minor disciplinary actions involving public employees, although due process representation as defined in *Skelly* is not required. An examination of the factual background of this case discloses it to be sufficiently dissimilar to the disciplinary factual background related in *Civil Service Assn.* as to not warrant further extension of the Meyers-Milias-Brown Act into an area obviously dealing with employee performance, a management function, as distinguished from a prediscipline investigation or a minor disciplinary conference.

Applied as broadly as their sweeping language, these statutes might have supported Robinson's demand had he been facing an interview in which discipline was to be imposed. Such was not the case. This truculent employee's supervisors were simply trying to get him into a "counseling" session for an analysis of his conduct. I do not believe the Legislature was bent upon propelling union representatives into a noncrisis meeting of that sort. In the words of retired Associate Justice Leonard Friedman, "It would be a terrible way to run a railroad."

I would affirm the judgment.

The petition of defendant and respondent and real party in interest and respondent for a hearing by the Supreme Court was denied December 13, 1979. Clark, J., was of the opinion that the petition should be granted.