Filed 4/1/25  Kirsch v. Santa Barbara County Civil Service Com. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ROBERT KIRSCH,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>SANTA BARBARA COUNTY CIVIL SERVICE COMMISSION,<br><br>  Defendant and Respondent;<br><br>COUNTY OF SANTA BARBARA et al.,<br><br>  Real Parties in Interest and Respondents. | 2d Crim. No. B333011<br>(Super. Ct. No. 22CV00655)<br>(Santa Barbara County) |

The Santa Barbara County Sheriff's Office (Department) terminated Robert Kirsch's employment as a custody deputy

because he submitted several inaccurate timesheets that overstated his hours worked. The Santa Barbara County Civil Service Commission (Commission) upheld his termination. Kirsch appeals from the trial court's denial of his petition for writ of administrative mandamus.

Kirsch contends the timesheet violations are not supported by substantial evidence, discipline was unwarranted because he did not intend to deceive, and the Commission abused its discretion by imposing termination as the penalty. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

### *Department's investigation*

Kirsch was employed by the Department as a custody deputy assigned to the main jail. Kirsch submitted a timesheet every two weeks and certified that the " 'timesheet accurately records [his] hours worked.' " In a random check of employee timesheets, the Department found suspicious entries by Kirsch and began an investigation.

When the investigator questioned Kirsch about overstated hours on his timesheets, he said he did not recall, or "could have been at a meeting," or suggested "a very large pool of things he could have been doing" without providing specifics for the investigator to check.

The Department concluded Kirsch misrepresented the number of hours worked for 17 days over a one-year period. It found "a blatant pattern . . . that was not inadvertent 'human error' or simple mistakes" but "reckless and deliberate disregard for your responsibility to accurately and honestly complete your timecards" which "violates the trust bestowed upon you as a peace officer and employee of the Sheriff's Office." The Department terminated Kirsch's employment.

2

*Civil Service Commission hearing*

Kirsch appealed to the Commission. Evidence at the 16-day hearing included time-stamped video recordings of Kirsch entering and exiting the jail, Department records (daily schedules, shift commander's recaps, and pay period schedules)[1], employee interviews, and testimony from both sides.

Regarding one violation, the shift commander's recap, daily schedule, and pay period schedule showed that Kirsch called in sick and did not work, but that he reported 12 hours of regular duty time. He told the investigator it was a mistake. Failing to use sick time can financially benefit employees because it can increase their service credits upon retirement.

On another day, Kirsch overreported his time by five and a quarter hours. The daily schedule showed he was late for work. Video recordings showed Kirsch was at the jail for 10 hours and 45 minutes. But he reported working 12 hours regular time. He also reported four hours of Deputy Sheriff's Association (DSA) time.[2] He claimed that a DSA meeting with a county supervisor

---

[1] The daily schedule (duty assignment roster) shows the deputies expected to work each shift, if they are working voluntary or mandatory overtime, where they are working, and if they take time off. The shift commander's recap shows events occurring during each shift such as a deputy calling in sick, who was on duty, whether they worked voluntary or mandatory overtime, who conducted perimeter checks, who accompanied an inmate to the hospital, and incidents with inmates. The pay period schedule shows the post where the deputy was working during the two-week period.

[2] As a DSA board member, Kirsch was paid for time spent on DSA business. Although DSA time had its own timesheet

and other DSA business took five and a quarter hours, but the calendar of the county supervisor and the testimony of his chief of staff showed the meeting took only 30 minutes. The Commission found it was "not likely" the meeting and other DSA business took the more than five hours Kirsch claimed.

On seven other days Kirsch overreported his regular hours, mandatory overtime, or voluntary overtime, with the amount of the discrepancies ranging from one and a half hours to four and a half hours.

The Commission found that on nine occasions over a 10-month period, Kirsch violated section 340.3.5(p) of the Santa Barbara County Sheriff's Office Policy Manual (Policy Manual), which lists as a basis for disciplinary action: "Failure to disclose or misrepresenting material facts, or the making of any false or misleading statement on any application, examination form, or other official document, report or form or during the course of any work-related investigation." The Commission also found he violated Policy Manual section 1036.1.1, which provides in part: "Employees are responsible for the accurate and timely submission of time sheets for the payment of wages."

The Commission concluded that all of Kirsch's timekeeping discrepancies "involved inflating the time he claimed to have been working which benefited him financially. . . . [T]hese errors cannot be minimized as inadvertent mistakes. They are, in fact, misrepresentations." However, it concluded that "[n]one of the misrepresentations . . . were done with an intent to deceive." The Commission upheld Kirsch's termination.

---

code, Kirsch was not disciplined for reporting it as regular work hours.

*Prevalence of time reporting errors*

The investigation and the Commission hearing included evidence that reporting errors by Department employees were common. Corporal Tena told the investigator that "all staff have had issues with time cards, one way or the other." Sergeant Morgan testified that more than half of employees' timesheets each pay period had errors, primarily failing to complete the timesheet at all, or listing the wrong codes. But he testified that "time inflation" issues were uncommon and only approximately one out of forty errors would have financially benefited the employee.

Sergeant Lopez told the investigator that Kirsch did not make more mistakes than other employees. Lopez said the employees who do not make mistakes tend to be those who did not work a lot of overtime or call in sick. Kirsch worked a substantial amount of overtime, an average of 34 hours each pay period. Lopez also told the investigator that errors like charging for work when an employee was sick occurred three to five times per pay period. But he testified he did not see reporting a sick day as work on a "regular basis" and did not "normally see" timesheets overstating the number of hours. Lopez was frustrated that he consistently had to tell Kirsch to correct his timesheets and "blunt[ly]" told Kirsch he expected his timesheets to be accurate.

*Administrative mandamus*

Kirsch filed a petition for writ of administrative mandamus in the superior court. (Code Civ. Proc., § 1094.5.) The court independently evaluated the evidence and concluded the weight of the evidence established the violations. The court did not make a finding regarding intent, but noted the Commission had

5

concluded that Kirsch "did not act with an intent to deceive." The court stated that negligent misrepresentations do not require an intent to defraud. The court concluded the Commission did not abuse its discretion by upholding Kirsch's termination.

DISCUSSION

*Sufficiency of the evidence*

In administrative mandamus actions, the trial court reviews the validity of a final order or decision of an administrative agency. (Code Civ. Proc., § 1094.5, subd. (a).) "With respect to culpability, i.e., whether [the employee] in fact committed the misconduct alleged, the superior court . . . examines the entire administrative record" and "exercises its independent judgment on the evidence." (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 45 (*Deegan*); Code Civ. Proc., § 1094.5, subds. (a) & (c).)

"[A] trial court must accord a ' "strong presumption of . . . correctness" ' to administrative findings." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.) "In the trial court, the [employee has] the burden of proof to show that the commission's decision was not supported by the weight of the evidence—that is, that the decision was not supported by the preponderance of the evidence." (*Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1077.)

"The trial court resolves evidentiary conflicts and is required to assess witnesses' credibility and to arrive at its own independent findings of fact." (*Deegan*, *supra*, 72 Cal.App.4th at p. 45.) The appellate court resolves all conflicts and reasonable inferences in favor of the prevailing party and is bound by the trial court's determination of culpability if supported by substantial evidence. (*Id.* at pp. 45-46.)

The trial court here considered Kirsch's challenges to the adequacy of the Department's investigation, including reviewing and retaining only the portions of videos in which the investigator saw Kirsch entering and leaving the jail and not the entire days corresponding to the alleged timekeeping violations. Kirsch said he sometimes completed his shift, slept in his car, then returned to the jail for a meeting. But Detective Scher testified that custody deputies are expected to stay inside the jail for their entire shifts and are not allowed to leave. Accordingly, the court could reasonably conclude, to a preponderance of the evidence, that the video recordings of Kirsch entering and leaving the jail showed the hours he worked in the jail each day.

Kirsch also challenged the investigation based on the investigator's failure to interview certain individuals or include their statements in her reports. But both sides had the opportunity to present witnesses at the Commission's hearing to fill in any perceived gaps in the investigator's reports. The court reasonably concluded that the investigation was fair and thorough.

We conclude the time-stamped video recordings of Kirsch entering and exiting the jail, the Department's written records, employee interviews, and testimony presented by the parties constituted substantial evidence of the violations.

*Intent to deceive*

Policy Manual section 1036.1.1 provides that "[e]mployees are responsible for the accurate and timely submission of time sheets for the payment of wages." Kirsch concedes this provision does not require an intent to deceive. He contends, however, that intent to deceive is required for violation of section 340.3.5(p): "Failure to disclose or misrepresenting material facts."

7

We review the Department's polices de novo as a pure question of law, applying the same rules of construction and interpretation used for statutes.  (*Dobbins v. San Diego County Civil Service Com.* (1999) 75 Cal.App.4th 125, 128-129.)  Because intent to deceive is not required to violate Policy Manual section 1036.1.1, that section alone is sufficient to sustain the misconduct here.  We also conclude that intent to deceive is not required for violation of section 340.3.5(p).

Kirsch relies on a dictionary definition of "misrepresent": "To give a false or misleading explanation or description of (something), esp. with the intent to deceive."  (Black's Law Dict. (12th ed. 2024).)  But California law recognizes that misrepresentations may be negligent.  "The tort of negligent misrepresentation . . . *does* require proof of ' "intent to induce another's reliance on the fact misrepresented" ' but "does *not* require proof of an intent to defraud."  (*Borman v. Brown* (2021) 59 Cal.App.5th 1048, 1061.)  While Kirsch's submission of inaccurate timesheets overstating his hours worked is not a tort, the trial court correctly concluded that a "material misrepresentation may be made negligently."

Policy Manual section 340.3.5(p) also prohibits "the making of any false or misleading statement on any . . . official document, report or form."  Kirsch again relies on Black's Law Dictionary, which states that "mislead" "usu[ally] implies willful deceit," but "may be inadvertent."  (Black's Law Dict. (12th ed. 2024).)  But California law recognizes that a misleading statement may be negligent.  For example, in the context of false advertising, an "untrue or misleading" statement is prohibited if "known, or . . . by the exercise of reasonable care should be known, to be untrue or misleading," and "can be violated through negligence."  (Bus. &

8

Prof. Code, § 17500; *Khan v. Medical Board* (1993) 12 Cal.App.4th 1834, 1846.)

Kirsch contends that intent to deceive is required for section 340.3.5(p) because that requirement is included in other paragraphs of section 340.3.5 found true by the Department (but not sustained by the Commission). These include section 340.3.5, paragraphs (i) ("falsification" of records or making "misleading entries . . . with the intent to deceive"), (n) ("[w]ork-related dishonesty"), and (o) ("[c]riminal, dishonest, infamous or disgraceful conduct"). But in our view those paragraphs show that if the policy's drafters meant to limit paragraph (p) to dishonesty or an intent to deceive, they knew how to do so. (*Rittiman v. Public Utilities Com.* (2022) 80 Cal.App.5th 1018, 1045-1046 [open records exemption for "correspondence" not limited to "personal" correspondence where that limitation appears only in other provisions].) " ' "It is a well recognized principle of statutory construction that when the [drafter] has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." ' " (*Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 507.)

Our conclusion is supported by the policy's "ostensible objects to be achieved, [and] the evils to be remedied." (*People v. Flores* (2003) 30 Cal.4th 1059, 1063.) While the policy prohibits dishonesty (Policy Manual § 340.3.5(i), (n), (o)), the inclusion of negligent misrepresentations allows the Department to address "[u]nsatisfactory work performance," "incompetence," "inefficiency," and "failure . . . to properly perform" job duties. (§ 340.3.5(c) & (ac).)

Kirsch cites the State Personnel Board precedential opinion in *In re Shelton* (1994) SPB Dec. No. 94-19 [1994 WL 16006539,

9

1994 CA St. Personnel Bd. Lexis 19]. (Gov. Code, § 19582.5.) Although not binding on this court (*California Dept. of Corrections v. State Personnel Bd.* (2004) 121 Cal.App.4th 1601, 1618), its analysis is helpful. Shelton was a peace officer disciplined for submitting inaccurate daily activity logs. (*In re Shelton,* 1994 WL 16006539 at p. *8.) The Board found Shelton did not overstate the hours worked and was not guilty of "dishonesty." (*Shelton*, at pp. *5, 8.) Instead, the Board sustained the violations based on "incompetency and inefficiency." (*Id.* at p. *8.) As in *Shelton*, discipline against Kirsch was sustained for erroneous time reporting even though dishonesty was not found.[3] Similarly, *In re Tolchin* (1996) SPB Dec. 96-04 [1996 WL 33404982 at pp. *1, 4, 1996 CA St. Personnel Bd. Lexis 6], also cited by Kirsch, upheld discipline for "inexcusable neglect of duty" even without proof the employee "intentionally misrepresented a known fact."[4]

*Coomes v. State Personnel Board* (1963) 215 Cal.App.2d 770, upon which Kirsch relies, is inapposite. It concludes that personnel discipline for "insubordination" and "willful disobedience" requires intent, willfulness, or knowledge. (*Id.* at p. 775.) But it does not impose an intent element for submitting incorrect timesheet entries that overstate the amount of hours

---

[3] The Board in *Shelton* reduced the penalty from dismissal to an 11-month suspension. (*In re Shelton, supra,* 1994 WL 16006539 at p. *12.) Kirsch's conduct was more serious because he obtained payment for hours not worked.

[4] We decline to consider the arbitrators' decisions cited by Kirsch because they " 'carry no precedential value.' " (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1363.)

worked.

Kirsch contends he was denied due process of law because violations were sustained based on an uncharged allegation of negligence. We conclude otherwise. The Department's order and notice of discipline served on Kirsch stated his incidents of submitting inaccurate timesheets "were, at a minimum, negligent." It also quoted from section 1203 of the Santa Barbara County Civil Service Rules: "CAUSES FOR DISCIPLINARY ACTIONS: [¶] a. Willful *or negligent* violation of . . . written and published departmental rules, regulations, and policies." (Italics added.) Kirsch was thus placed on notice he could be disciplined for negligent misstatements in his timecards.

*Penalty*

Kirsch contends the Commission abused its discretion when it sustained termination of employment as the penalty. We are not persuaded.

We review the Commission's determination of penalty for abuse of discretion and do not defer to the trial court's determination. (*Deegan, supra*, 72 Cal.App.4th at pp. 45-46.) "Neither the trial court nor the appellate court is entitled to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed." (*Id*. at p. 45.) "It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse of discretion is shown." (*Id*. at p. 47.) And here, we conclude the Commission did not abuse its discretion when it terminated Kirsch's employment based on his overreporting of time worked. (See *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 75-76 [overreporting work by two hours and 33 minutes warranted termination].)

11

"[I]n the context of public employee discipline," the "overriding consideration" is "the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 218.) Peace officers are held to a higher standard based on the trust placed in them. (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 572.) Kirsch harmed the public service by obtaining public funds he did not earn and undermining confidence in the accuracy of peace officer reports. In light of the number of violations and because Kirsch's supervisor had already admonished him to submit accurate timecards, it was reasonable for the Department to conclude recurrence was likely.

Kirsch contends the discipline was disproportionate because it did not appear that other employees were disciplined for timesheet violations. But disparate punishment of employees does not warrant relief where the conduct is "substantially different from the instant case." (*Pegues v. Civil Service Com.* (1998) 67 Cal.App.4th 95, 105 [nondischarged employees had less experience].) Kirsch's misconduct was substantially different from that of other employees because, as the Commission found, his errors "[a]ll involved inflating the time he claimed to have been working which benefited him financially" and thus were "more serious than putting in the wrong code or mistakenly recording a training day as regular work time." Moreover, " ' "there is no requirement that charges similar in nature must result in identical penalties." ' " (*Id*. at p. 106; *Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 230.)

## DISPOSITION

The judgment is affirmed.  Real party in interest and respondent Santa Barbara County Sheriff's Office shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Rains Lucia Stern St. Phalle & Silver, Ken Yuwiler, Jacob A. Kalinski and Gidian R. Mellk for Plaintiff and Appellant.

Rachel Van Mullem, County Counsel, Teresa A. Martinez, Deputy County Counsel, for Real Party in Interest Santa Barbara County Sheriff's Office.

No appearance for Respondent Santa Barbara County Civil Service Commission.