[L.A. No. 29961. In Bank. July 12, 1972.]

PAULINE NIGHTINGALE, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.

508

COUNSEL

Hochman, Salkin & DeRoy and George DeRoy for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Lynn Henry Johnson, Assistant Attorney General, for Defendants and Respondents.

## OPINION

BURKE, J.—In the instant case, we are called upon to review the suspension of a state civil service employee pursuant to the provisions of Government Code section 19572. We have concluded that the applicable provisions of that section are constitutional, that the evidence supports the findings of the trial court and State Personnel Board that appellant's conduct was adequate cause for the discipline imposed, and that the judgment of the trial court denying mandate should be affirmed.

Appellant Nightingale is a referee with the Division of Industrial Accidents. She was first employed by the state in 1937, and became a referee in 1963. On January 27, 1969, appellant received a notice from the division (see Gov. Code, § 19574) suspending her for 20 working days. The principal ground for suspension was failure of good behavior during duty hours of such a nature that it caused discredit to the Workmen's Compensation Appeals Board or the Division of Industrial Accidents (Gov. Code, § 19572, subd. (t)). Other charges in connection with the same matter were not sustained in subsequent proceedings.

Appellant sought and received a hearing before the State Personnel Board on May 1 and 21, 1969. The circumstances supporting the allegations against appellant, as related in the hearing officer's findings of fact and proposed decision, are as follows: A close friend of appellant, Mrs. Eve Shub, suffered an injury to her right arm while employed by the State Department of Employment. At appellant's suggestion, Mrs. Shub hired a lawyer and filed a claim with the Workmen's Compensation Appeals Board in Los Angeles. Because Mrs. Shub's left arm had been amputated some 20 years earlier, her claim involved the Subsequent Injuries Fund as well as her most recent employer.

On or about September 20, 1968, during duty hours, appellant privately contacted Robert Licker, assistant referee in charge of the section to which the Shub case had been assigned, and asked that the matter, then set for November 22, 1968, be advanced to October 23, 1968. Resolving evidentiary conflicts in appellant's favor, the hearing officer found that in contacting Licker appellant intended only to expedite her friend's case. The hearing officer specifically found that she did not intend to influence the selection of a particular referee to hear the matter.

Appellant also contacted Edward M. Belasco, deputy attorney general in charge of the attorneys representing the Subsequent Injuries Fund in Los Angeles. Appellant informed Belasco of the Shub case, essentially giving Mrs. Shub's side of certain problems in the case. Appellant asked Belasco, who was a personal friend of more than 20 years and a former co-worker, to handle the case himself and not assign it to one of his subordinates because he understood what had happened, had "heart," and would perhaps be more gentle on cross-examination of Mrs. Shub than one of the younger attorneys.

The hearing officer concluded that appellant had attempted to obtain special treatment both within the Workmen's Compensation Appeals Board and in the Attorney General's office. Although appellant did not attempt to obtain any award for Mrs. Shub to which she would not otherwise be entitled, and although her efforts apparently did not affect the fairness of the proceedings, nevertheless the hearing officer concluded that appellant's "inside" activities could have a "destructive" effect on the appearance of impartiality. Consequently, after resolving evidentiary conflicts in appellant's favor, the hearing officer found that although the evidence did not support the charges of inexcusable neglect or immorality, there was sufficient evidence of a failure of good behavior under subdivision (t) of section 19572. Considering appellant's fine record of over 30 years of state service and the absence of improper motive in seeking to obtain special treatment for Mrs. Shub, the hearing officer recommended a penalty of suspension for 20 days as appropriate for appellant's use of her inside position to attempt to expedite the hearing of a matter involving a personal friend.

The hearing officer's findings of fact and proposed decision were adopted by the State Personnel Board on June 5, 1969. The board denied a petition for rehearing on August 7, 1969.

On October 23, 1969, appellant filed a petition for writ of mandate in Los Angeles Superior Court. The court found, as a matter of fact and law, that all of the findings of the State Personnel Board were supported by substantial evidence. The court further concluded, as a matter of law, that (1) section 19572, subdivision (t), is not unconstitutionally vague; (2) the penalty of 20 days suspension was not an abuse of the board's discretion, and was supported by the board's findings; (3) appellant was afforded due process and a fair hearing at the administrative proceedings; and (4) appellant failed to show good cause for the issuance of an order compelling the division to answer certain interrogatories; in any event the prior order regarding these interrogatories became final and is not subject to collateral review. Appellant now appeals from the adverse judgment.

1. *The constitutionality of section 19572, subdivision (t).*

Section 19572 provides in pertinent part that "[e]ach of the following constitutes cause for discipline of an employee, or person whose name appears on any employment list: . . . (t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment."

Appellant contends that the language of subdivision (t) is unconstitutionally vague, relying upon the decisions of this court in *Shepherd* v. *State Personnel Board*, 48 Cal.2d 41 [307 P.2d 4], and *Morrison* v. *State Board of Education*, 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375]. Neither case, however, supports her position. In *Shepherd*, we were interpreting the predecessor to subdivision (t), then contained in subdivision (s), which provided that an employee could be disciplined for "[a]ny other failure of good behavior or acts either during or outside of duty hours which are incompatible with or inimical to the public service." We determined that subdivision (s) had to be construed in the light of a 1949 amendment to Government Code section 19251, which was aimed at providing "for the designation of incompatible activities in a specified manner, namely, that each appointing power should prescribe the prohibited activities, subject to approval of the State Personnel Board." (48 Cal.2d at p. 49.) In *Shepherd*, we held that the purposes of section 19251 "would be defeated if, in the absence of compliance with that section by the appointing power, an employee could be punished under subdivision (s) of section 19572 for acts incompatible with or inimical to the public service." (48 Cal.2d at p. 49.) Consequently, the employee in *Shepherd* could not be dismissed for receiving payments from present or prospective meat plant owners, whose plants he was required to inspect, for drawing construction and remodeling plans which he prepared outside of duty hours, *after* adoption of the amendment in 1949.

Appellant's reliance on *Shepherd* to show the unconstitutionality of subdivision (t) is entirely misplaced, for *Shepherd* did no more than construe one statute in light of another. Appellant contends that the application of subdivision (t) to her violates section 19251, in that the division failed to specify in advance that her conduct would constitute a "failure of good behavior." This contention must also fail. As the Court of Appeal held in *Orlandi* v. *State Personnel Bd.*, 263 Cal.App.2d 32, 40 [69 Cal.Rptr. 177], "it is apparent from a study of section 19251 that it applies only to activities which involve employment or work incompatible with state service and the acceptance of moneys therefor." Nothing in the record indicates, nor does appellant contend, that she engaged in such activities.

Appellant's argument under *Morrison* stems from a statement therein that "Civil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies." (1 Cal.3d at p. 231.) As we recognized in *Morrison,* however, vagueness can be cured by a more precise judicial construction and application of the statute in conformity with the legislative objectives. In *Morrison* itself, we upheld the prohibition against "immoral and unprofessional conduct involving moral turpitude" (Ed. Code, § 13202) by limiting that phrase to such conduct as indicates an unfitness to teach.

Moreover, the same constitutional attack on subdivision (t) was presented and rejected in *Gee* v. *California State Personnel Bd.,* 5 Cal.App.3d 713, 720-721 [85 Cal.Rptr. 762] (hg. den.). There, the court cited *Orlandi* for the proposition that subdivision (t) has been judicially limited in conformance with *Morrison*: "The first 19 subdivisions of section 19572, (a) through (s), list specific kinds of conduct which, if committed, constitute causes for discipline. It is obvious that they do not exhaust the kind of conduct which can be detrimental to state service. Subdivision (t) relates to 'other failure of good behavior' and is a catchall to include situations and acts which do not easily fit into the 19 specific causes. *The failure of good behavior must be of such a nature that it reflects upon the employee's job and cannot be just any behavior which the agency might consider improper.*" (263 Cal.App.2d at p. 37; italics added.)

The court in *Gee* cites several cases in which statutes similar to section 19572, subdivision (t), have been upheld against constitutional attacks. In *Vadnais* v. *Dept. of Motor Vehicles,* 3 Cal.App.2d 562 [40 P.2d 559], the court found that language in the Civil Service Act of 1929, section 14 (now repealed), referring to a " 'failure of good behavior or any other act or acts which are incompatible with or inimical to the public service'" constitutionally sound. In *Board of Education* v. *Swan,* 41 Cal.2d 546, 553 [261 P.2d 261], the court held that "The fact that the term 'unprofessional conduct' [Ed. Code, § 13521, prior to amendment in 1954] is not defined by statute authorizing the dismissal of a teacher [citation] does not render it void for uncertainty." (See also, *Rudolph* v. *Athletic Commission,* 177 Cal.App.2d 1, 19 [1 Cal.Rptr. 898]; *Hingsbergen* v. *State Personnel Bd.,* 240 Cal.App.2d 914, 924-926 [50 Cal.Rptr. 59].)

█ In the case at bar, it is difficult to believe that appellant, however innocently motivated, could not appreciate in advance that her proposed conduct would constitute a "failure of good behavior" likely to bring dis-

credit to her employer. Consequently, we conclude that subdivision (t) is neither vague nor uncertain on its face or in application to the instant case.

### 2. Interpretation of section 19572, subdivision (t).

Appellant contends that a "failure of good behavior" must be known to some portion of the public before it may be said to have caused "discredit to his agency or his employment," within the meaning of subdivision (t). She asserts that the record fails to show that her behavior was publicly known, causing actual discredit to her agency. Her interpretation of subdivision (t), however, has been firmly rejected in *Orlandi* v. *State Personnel Bd., supra*, 263 Cal.App.2d 32.

*Orlandi* involved a highway patrolman who "fixed" a speeding ticket issued to a business associate by wilfully taking the court copy of the ticket from the clerk's office, later destroying it and thereby obstructing an investigation then being conducted by his superiors. The notice of punitive action served upon the officer charged him with dishonesty, wilful disobedience, conflict of interest, and "failure of good behavior" under subdivision (t). The personnel board rejected the first three charges, but affirmed the officer's dismissal for violation of subdivision (t). The trial court denied mandate, and the Court of Appeal affirmed.

In reaching its decision, the court rejected the officer's contention that subdivision (t) requires the misbehavior to be publicly known, resulting in actual discredit to the agency. The court found nothing in the legislative history to support this contention. It held that the language of subdivision (t) "is clear on its face and requires no construction." (263 Cal.App.2d at p. 36.) The court rejected the officer's contention that the word "causes" should be literally interpreted, stating " 'The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole.' (*Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 . . . .)"

The court found that the statute was addressed to the conduct of state employees, not to the publicity such conduct might attract. It would be logically absurd, the court noted, to permit misconduct so long as it was kept "within the family," or to require that an agency publicize the misdeeds of an employee in order to be able to discipline him. The court added that "The failure of good behavior must be of such a nature that it reflects upon the employee's job and cannot be just any behavior which the agency might consider improper," but, given this qualification, it held that "Subdivision (t) refers to conduct which would reflect discredit on the

employing agency or the position held by the person engaging in such conduct, regardless of whether publicized or not." (263 Cal.App.2d at p. 37.)

Appellant urges us to reject the *Orlandi* rationale, as it would permit a governmental agency to dismiss or suspend employees for a wide range of relatively innocent conduct which might, if known to the public, cause discredit to the agency. If there is any validity to the concern that the personnel board may be inclined to pursue, or will be unable to weed out di minimus infractions, it is not apparent in this case. As the hearing officer stated, "To have a Referee working from inside the agency on behalf of either party to a pending action is obviously improper and can reasonably be expected to raise doubts among litigants as to the impartial exercise of discretion by the agency."[1]

### 3. *The validity of the penalty of 20 days suspension.*

Appellant contends that no substantial evidence supports the punitive action against her, and that consequently, it was an abuse of the trial court's discretion to refuse to review the penalty imposed. She cites *Garza* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451], and *LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 638-639 [83 Cal.Rptr. 208, 463 P.2d 432], for the proposition that a finding by an administrative agency must be supported by substantial evidence in the record as a whole. We agree, but do not find this principle determinative of the case before us since the evidence before the hearing officer clearly supports the officer's findings as adopted by the board. It is immaterial that appellant did not intend to have a particular referee as-

---

[1] It should also be noted that the alternative holding in *Orlandi,* that in any event the officer's misconduct "was known to a number of persons," and therefore any requisite element of "publicity" was satisfied, is not readily distinguishable from the facts in the present case. In *Orlandi,* the court said ". . . this act caused discredit in the minds of all those persons who knew of it—Officer Chapman [the arresting officer], the clerk, the officers in the investigation, the Commissioner of the California Highway Patrol, the judge of the traffic court, the man to whom appellant gave the citation to be returned to Festerson [the business associate], Festerson, some of the latter's employees. Appellant's act could very well continue to cause discredit to the patrol and to appellant himself in the future." (263 Cal.App.2d at p. 38.)

In the present case, appellant's actions became known to her fellow employees through the "coffee hour gossip" of Referee Licker to Deputy Belasco, and eventually to the private practitioner who filed the complaint that instigated this action. Consequently, some members of the public knew of Mrs. Nightingale's actions.

Appellant would attempt to further distinguish *Orlandi,* however, by saying that subdivision (t) not only requires that the actions be known, but that they be made public by the offending employee, rather than a gossiping co-worker. Neither the language of subdivision (t) nor common sense supports this position. If misconduct becomes known, the likelihood of discrediting the agency would not be dependent on the source of public knowledge.

signed to the case, and that she neither intended to nor did affect the fairness of the proceedings in Mrs. Shub's case. ▬ Her efforts on behalf of her friend amounted to an unwarranted interference with proceedings scheduled to be held before another judicial officer. Despite her honorable intentions, appellant thereby violated subdivision (t).

Appellant also argues in a separate, but related point, that it was an abuse of the trial court's discretion not to review the propriety of the penalty originally assessed against her by the division since it was based upon several charges arising out of the same matter only one of which was sustained. Since the board expressly found her innocent of the other charges, the board assertedly had no basis for retaining the same penalty for the one remaining charge.

▬ This argument is, however, addressed to the wrong forum, for it is well settled that in reviewing the penalty imposed by an administrative body, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter. (*Macfarlane* v. *Dept. of Alcoholic Bev. Control*, 51 Cal.2d 84, 91 [330 P.2d 769]; *Brown* v. *Gordon*, 240 Cal.App. 2d 659, 667 [49 Cal.Rptr. 901].) *Shepherd* v. *State Personnel Board, supra*, 48 Cal.2d 41, is not to the contrary. In *Shepherd,* this court directed the superior court to enter judgment instructing the State Personnel Board to set aside its decision and to determine the penalty to be imposed in light of our opinion. The basis for this decision was not our disagreement with the penalty imposed by the board, but rather, our determination that the board imposed a penalty of dismissal based at least in part on conduct which was not proper cause for discipline. We did not presume to alter or annul the penalty itself, but merely remanded the case to the board for reconsideration in light of our opinion.[2]

---

[2]Nor does *Carroll* v. *Civil Service Commission,* 11 Cal.App.3d 727, 732-733 [90 Cal.Rptr. 128], avail appellant. In *Carroll,* a county employee with a service record of 10 years without prior charges of dereliction was dismissed by his supervisor for stealing $1 from the coffee fund and not immediately admitting the theft. The Civil Service Commission sustained the penalty and Carroll instituted mandamus proceedings contending that dismissal was unreasonable and unduly severe. The trial court held that the penalty was "an arbitrary and clear abuse of discretion," and ordered the commission to reconsider it. The commission did not appeal, but instead purported to reconsider the penalty, subsequently adopting the same penalty as before. Consequently, after this second penalty order was set aside by the trial court, the reviewing court held that "The [trial] court had jurisdiction to hear and determine the issue raised by the petition for writ of mandate, i.e.. whether the severity of the penalty imposed constituted an abuse of discretion (Code Civ. Proc., § 1094.5; 32 Cal.Jur.2d, Mandamus, § 28, p. 181 et seq. . . .). 'While mandamus will not lie to control the discretion exercised by a public officer or board [citations] it will lie to correct an abuse of discretion by such officer or board.' (*Baldwin-Lima-Hamilton Corp.* v. *Superior Court,* 208 Cal.App.2d 803, 823. . . .)" Since the trial court had jurisdiction to hear the issue, and its order had not been appealed, the order

Nothing in the record before us suggests that the board improperly considered the charges of neglect of duty or immorality in sustaining the 20-day suspension for violation of subdivision (t). To the contrary, the hearing officer resolved all evidentiary conflicts in appellant's favor and found only a violation of subdivision (t). ■■ Nevertheless, here, both the hearing officer and the board agreed the 20-day suspension was fully warranted and should be sustained because of the impropriety of appellant's actions, the "difficulty and embarrassment for the Assistant Referee in Charge, the Deputy Attorney General and the Workmen's Compensation Appeals Board" created by respondent's "poor judgment," and the potentially destructive effect on the appearance of impartiality that appellant's actions could foster.

Appellant further suggests that the hearing officer or board may have imposed the 20 days suspension in order to punish her for pursuing her legal remedies and defending herself. We have reviewed the record, however, and find nothing therein which would indicate that appellant was penalized for exercising her legal rights. We cannot say that as a matter of law a 20-day suspension is unduly severe under the circumstances in this case.[3]

### 4. Denial of interrogatories.

Appellant's final argument is that she was denied her discovery rights in the administrative proceedings and was forced to proceed to trial without being completely prepared to present her defense. She does not contend that the division curtailed her statutory right to inspect documents or interview other employees (Gov. Code, § 19574.1)[4] for the division arranged for appellant's counsel to interview nine employees of the WCAB and supplied her with copies of all unprivileged documents in its possession

---

became final and the Court of Appeal had no occasion to reach the merits of that order.

[3]Appellant contends that the trial court was under the mistaken impression that it could not alter the penalty order *even if* it found that the 20-day suspension was an abuse of discretion. The court declined to set aside the suspension, however, because it expressly found that the findings of the hearing officer supported the decision. The record fails to show that the court did not understand its proper function.

[4]"An employee who has been served with notice of punitive action, or an attorney admitted to the practice of law in this State and designated by him, shall have the right to inspect any documents in the possession of or under the control of the appointing power which are relevant to the punitive action taken and which would be admissible in evidence at a hearing of the employee's appeal from the punitive action. The employee, or his attorney, shall also have the right to interview other employees having knowledge of the acts or omissions upon which the punitive action was based. Interviews of other employees and inspection of documents shall be at times and places reasonable for the employee and for the appointing power."

relevant to the case. ■ Rather, appellant contends that she was prejudiced by the refusal of Roy J. Bell, administrative director, Division of Industrial Accidents, to answer 35 interrogatories served on March 27, 1969. The hearing officer denied appellant's request for an order requiring answers;[5] she then sought a writ of mandate in superior court to compel the division to answer the interrogatories.

At the discovery hearing held on April 28, 1969, appellant contended that under *Shively* v. *Stewart,* 65 Cal.2d 475 [55 Cal.Rptr. 217, 421 P.2d 65], the discovery provisions of Government Code section 19574.1 are not exclusive, and that she is entitled to propound interrogatories pursuant to the Code of Civil Procedure section 2030. The division urged that section 19574.1 is the exclusive discovery granted to a litigant before the State Personnel Board, and that *Shively* does not apply. Neither the order entered by the court in the discovery case nor the transcript of the proceedings are part of the record before us. The board now asserts that "the trial court in its remarks from the bench, announcing that it was denying petitioner's Petition for Writ of Mandate, specifically stated that it was not basing its denial upon the appointing power's section 19574.1 argument; that accepting petitioner's argument that she had rights under *Shively,* still petitioner had made no showing of good cause for the answering of her interrogatories, as required by *Shively* at page 482, and on this basis it was holding that petitioner had failed to state cause of action." No appeal was taken from the judgment entered on April 30, 1969, which assertedly held "that petitioner's petition had failed to state cause of action" for mandate.

The trial court herein held "That in the administrative proceedings before the State Personnel Board petitioner failed to show good cause within the meaning of Shively v. Stewart, [*supra*], 65 Cal.2d 475 (1966) and Everett v. Gordon, 266 Cal.App.2d 667 (1968) for the issuance of any order compelling her appointing power to answer her interrogatories and that the matter of the interrogatories became *res adjudicata* after petitioner failed to appeal the adverse judgment against her on that subject matter in the aforesaid Case No. 951617 in the within court."

Appellant contends that summary denial of a writ of mandate is not res judicata of the merits in a subsequent proceeding, citing *McDonough* v. *Garrison,* 68 Cal.App.2d 318, 327 [156 P.2d 983]. *McDonough* relied upon *Funeral Dir. Assn.* v. *Bd. of Funeral Dirs.,* 22 Cal.2d 104 [136 P.2d 785], and *State Bd. of Equalization* v. *Superior Ct.,* 20 Cal.2d 467 [127

---

[5]The hearing officer did order that the information requested in two questions be supplied to appellant as "necessary to implement appellant's rights under Govt. Code Section 19574.1."

P.2d 4], for the proposition that "If there is any other possible ground other than the merits upon which the denial of the petition for a writ could have been based, such denial is not res judicata of the merits in a subsequent proceeding." But appellant does not challenge the board's representation of the basis for the superior court's decision in No. 951617. Consequently, she has failed to show that there was any other possible ground for the court's prior decision, and res judicata should apply.

In any event, the board correctly points out that appellant's request for interrogatories failed to show good cause as required by *Shively* v. *Stewart, supra*, 65 Cal.2d 475, 482. Hence, we need not reach the question of whether the discovery procedures specified in the Civil Discovery Act are available in ordinary administrative proceedings.[6] It is evident, we conclude, that appellant had the benefit of the full range of discovery to which she was entitled.

The judgment of the trial court is affirmed.

Wright, C. J., Peters, J., Tobriner, J., and Sullivan, J., concurred.

---

[6]Note that *Romero* v. *Hern*, 276 Cal.App.2d 787, 790 [81 Cal.Rptr. 281], holds that "Except for disciplinary proceedings before the State Bar, which is *sui generis* and functions as an arm of the Supreme Court in such matters . . . the Civil Discovery Act (Code Civ. Proc., § 2016 et seq.) does not apply to administrative adjudication."