[Civ. No. 24683. Third Dist. Mar. 27, 1986.]

FRANK CONSTANCIO, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
CALIFORNIA YOUTH AUTHORITY,
Real Party in Interest and Respondent.

**COUNSEL**

Loren E. McMaster for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Faith J. Geoghegan, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**SIMS, J.**—Plaintiff Frank Constancio appeals from a judgment denying his petition for writ of mandate (Code Civ. Proc., § 1094.5). Plaintiff sought to compel defendant California State Personnel Board (hereafter Board) to set aside its decision upholding his dismissal from employment with respondent Department of the Youth Authority (hereafter Department).

Plaintiff contends: (1) the Board's implied finding he willfully used phencyclidine (PCP) is not supported by substantial evidence; (2) the Board's decision upholding his termination is not supported by its findings; (3) the Board improperly shifted to plaintiff the burden to prove his PCP use was involuntary; (4) the term "Failure of Good Behavior" as grounds for dismissal is unconstitutionally vague; (5) his witness was intimidated by the presence of Stockton police officers in and around the hearing room; and (6) the Board's penalty of dismissal constitutes an abuse of discretion. We disagree with each of plaintiff's contentions and shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was terminated from employment as a group supervisor at the Department's DeWitt Nelson Training Center in Stockton, California, effective June 19, 1982. Plaintiff's termination was based on the following facts found by the Board: On or about May 30, 1980, plaintiff was arrested for driving a vehicle while under the influence of alcohol. (Former Veh. Code, § 23102, subd. (a); see Veh. Code, § 23152, subd. (a).) Plaintiff was subsequently convicted of that offense on March 18, 1981.

At the time of his arrest plaintiff refused to take the required sobriety tests; consequently, his driver's license was suspended for a six-month period from November 1980 through May 1981. Plaintiff did not inform his supervisors of the May 30, 1980, arrest, the subsequent conviction, nor of the suspension of his driver's license.

On May 12, 1982, plaintiff was arrested for driving while under the influence of PCP (Veh. Code, § 23152, subd. (a)) and for being under the influence of PCP (Health & Saf. Code, § 11550, subd. (a)). On August 3, 1982, plaintiff pled guilty to one count of driving under the influence; the other charges were dropped. Once again, plaintiff failed to report his arrest to his supervisors. Plaintiff's employer learned of the May 12, 1982, arrest and the 1981 conviction.

On May 28, 1982, plaintiff's supervisor interviewed him about the incidents. Plaintiff confirmed the incidents and explained his failure to report

them by saying he didn't think they were serious enough to report. He explained the May 12, 1982, incident by stating he received a cigarette from his cousin and had lit it and smoked it (apparently while driving) but had thrown it away due to its funny taste. The cigarette had a strange effect on plaintiff causing him to lose memory. The first thing plaintiff recalled after throwing the cigarette away was his being placed under arrest.

Plaintiff was notified of his termination by letter which stated five statutory grounds for dismissal: (1) inexcusable neglect of duty (Gov. Code, § 19572, subd. (d)); (2) willful disobedience (Gov. Code, § 19572, subd. (o)); (3) misuse of state property (Gov. Code, § 19572, subd. (p)); (4) violation of the Government Code or Board rules (Gov. Code, § 19572, subd. (q)); and (5) failure of good behavior during or outside of duty hours causing discredit to his agency or his employment (Gov. Code, § 19572, subd. (t)).

Plaintiff appealed his dismissal to the Board. On September 14, 1982, an administrative law judge (ALJ) issued a proposed decision upholding the dismissal. The Board adopted the ALJ's decision. On December 16, 1982, plaintiff filed a petition for writ of mandate (Code Civ. Proc., § 1094.5) in Sacramento Superior Court alleging he had obtained new evidence which he could not through due diligence have presented to the Board. The new evidence was summarized in an attached declaration of one Junior Trujillo who declared he was standing outside a mini-market when two men, plaintiff and his cousin, exited the market. Plaintiff asked his cousin for a cigarette. Trujillo offered plaintiff a cigarette from a pack he had. Unbeknownst to Trujillo or to plaintiff the cigarette was laced with PCP. Trujillo later learned of the mistake. Plaintiff alleged in his petition that he could not locate Trujillo prior to the administrative hearing because he did not know Trujillo's name or telephone number.

On November 23, 1983, the trial court entered judgment granting the peremptory writ of mandate. The writ ordered the Board to set aside and reconsider its decision and to take further actions required by law.

The Board set its decision aside and the ALJ subsequently heard Trujillo's testimony. On March 26, 1984, the ALJ issued a proposed decision.

The ALJ found that plaintiff's job specification defined his position as one in which he is responsible for the security, custody, and supervision of wards assigned to the facility. The ALJ found that plaintiff's minimum job qualifications include the requirement that he possess a valid California driver's license. As part of his duties plaintiff is required to operate a motor vehicle on patrol and in emergency situations.

The ALJ concluded plaintiff's 1981 driving under the influence conviction and license suspension, and his failure to report them to his supervisors, constituted grounds for discipline. The ALJ concluded plaintiff's assertion he did not drive a state motor vehicle during the period of his license suspension was difficult to believe, but even if it were true, it would not excuse plaintiff's failure to report the suspension.

The ALJ concluded plaintiff's convictions for driving under the influence constituted failure of good behavior of such a nature as to negatively reflect on his employment. (Gov. Code, § 19572, subd. (t).) The ALJ also concluded plaintiff's use of PCP constituted a failure of good behavior.

The ALJ noted plaintiff's contention that his admitted use of PCP was "unsuspecting." The ALJ concluded plaintiff's version of how he obtained the PCP-laced cigarette was not credible. The ALJ also found the corroborative testimony of Junior Trujillo was not credible. The ALJ concluded plaintiff's termination was warranted. The Board adopted the ALJ's proposed decision as its decision in the matter.

On August 14, 1984, plaintiff filed in superior court a motion for supplemental peremptory writ of mandate. Following a hearing the trial court issued a judgment denying the motion for supplemental peremptory writ. This appeal followed.

## DISCUSSION

### I

We first consider plaintiff's contention the Board's implied finding his use of PCP was voluntary and willful is not supported by substantial evidence. The contention must fail.

Our review of the Board's findings is governed by well established principles. ■ The Board is a statewide administrative agency deriving its adjudicative powers from the state Constitution; the Board's findings must be upheld by a reviewing court if they are supported by substantial evidence. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217, fn. 31 [124 Cal.Rptr. 14, 539 P.2d 774]; *Parker* v. *State Personnel Bd.* (1981) 120 Cal.App.3d 84, 87 [174 Cal.Rptr. 333]; see *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35-36 [112 Cal.Rptr. 805, 520 P.2d 29].) "We review the board's decision in light of the entire administrative record. [Citation.] Our standard is whether the record discloses substantial evidence (reasonable, credible and of solid val-

ue) such that a reasonable trier of fact could have found as it did. [Citation.]" (*Parker, supra,* at p. 87.)

Plaintiff does not challenge any of the Board's express findings; his attack is focused solely on the Board's implied finding his use of PCP was voluntary. That finding is necessary to support the Board's conclusion plaintiff's use of PCP constituted a failure of good behavior.

Plaintiff acknowledges the Board had before it evidence he ingested PCP. As plaintiff correctly points out, the Board had before it no direct evidence plaintiff's ingestion of the drug was voluntary. The Board did have the testimony of the plaintiff and his witness, Trujillo, that plaintiff's use of the drug was involuntary, but the Board found the defense evidence not credible. ▮ Relying on *Martin* v. *State Personnel Bd.* (1972) 26 Cal.App.3d 573 [103 Cal.Rptr. 306], plaintiff suggests the Board's disbelief of his evidence of *involuntary* use does not create affirmative evidence of *voluntary* use; thus, plaintiff contends the Board's finding of voluntary use is not supported by substantial evidence. We disagree.

We begin by noting that plaintiff's evidence was fraught with inconsistencies. Witness Trujillo testified that, while he did not recall the time of day he gave plaintiff the cigarette, it was in the daytime. Plaintiff contradicted Trujillo by testifying he worked a 2 p.m. to 10 p.m. shift and went to the mini-market on his way home from work. As the Attorney General points out, even in May it is not light outside after 10 p.m. Trujillo also testified that he was standing outside the mini-market alone while in his declaration in support of plaintiff's writ petition he stated he was standing outside the store with a group of people.

Both plaintiff and his cousin testified it was plaintiff's cousin who asked for the cigarette. Trujillo testified it was plaintiff and not his cousin who made the request.

Trujillo testified he gave plaintiff a cigarette from a nearly full pack of cigarettes. Plaintiff's cousin testified Trujillo pulled the cigarette from his shirt pocket and that it was not in a pack.

Trujillo testified he did not know plaintiff's cousin, had not seen him around in Stockton, and the cousin did not look at all familiar. Plaintiff's cousin testified he knew the cigarette donor as "John" from the streets and saw him approximately twice a month. Junior Trujillo's true name was not "John" but Raul Trujillo, Jr.

Trujillo testified a PCP-laced cigarette would have a different color than a regular cigarette and would be instantly distinguishable. Plaintiff testified

the cigarette he smoked was a regular cigarette. In light of these inconsistencies the Board could reasonably conclude plaintiff's proffered evidence was not credible.

Having rejected plaintiff's proffered evidence, the Board could reasonably conclude Plaintiff's use of PCP was voluntary. Our opinion in *Martin* v. *State Personnel Bd.*, *supra*, 26 Cal.App.3d 573 does not preclude the Board from so concluding.

In *Martin* the employee, a correctional officer at San Quentin Prison, was charged with disobedience of a rule prohibiting employees from receiving letters from inmates. (26 Cal.App.3d at pp. 575-576.) Prison security officers found a letter from an inmate in Martin's prison living quarters. (P. 577.) Martin's testimony he did not know about the letter and did not know that he had it was disbelieved by the Board. (Pp. 579, 584.) This court rejected the Attorney General's argument that Martin's unexplained possession of the letter itself comprised substantial evidence that Martin violated the prison rule. (P. 584.) This court explained, "[T]he fact that the letter was in [Martin's] room was not probative of *the manner in which it got there.*" (P. 584, italics in original.)

Underlying our decision in *Martin* was the fact there were numerous ways in which the inmate's letter could have arrived in Martin's room without Martin having violated the prison rule. Evidence before the Board in that case revealed prison inmates had regular access to Martin's living quarters and could have brought the letter to Martin's room. (P. 578.) In this case, unlike *Martin,* there are not numerous explanations for plaintiff's ingestion of PCP; there are only two. Plaintiff either ingested the drug unwittingly or he ingested it knowing what it was. The Board decided the only evidence of unwitting use was not worthy of belief; thus, it was entitled to conclude plaintiff's use of the drug was voluntary.

In *People* v. *White* (1969) 71 Cal.2d 80 [75 Cal.Rptr. 208, 450 P.2d 600] our Supreme Court held that possession of a narcotic drug may be established by circumstantial evidence and any reasonable inferences drawn from such evidence. (Pp. 82-83.) The court held that possession of a narcotic drug constitutes substantial evidence that the possessor of the narcotic knew of its nature. (P. 83.) Similarly, in this case the Board could infer from plaintiff's ingestion of PCP that he knew of its nature. We conclude the Board's implied finding of voluntary use is supported by substantial evidence. (*Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d at p. 217, fn. 31; *Parker* v. *State Personnel Bd.*, *supra*, 120 Cal.App.3d at p. 87.)

## II

We next consider plaintiff's contention the Board's conclusions are not supported by its findings. The contention lacks merit.

We recently emphasized the need for administrative agencies to make appropriate findings in support of their decisions. In *Respers* v. *University of Cal. Retirement System* (1985) 171 Cal.App.3d 864 [217 Cal.Rptr. 594] we noted that findings by an administrative agency are necessary as a practical matter in order to permit judicial review of agency action. (P. 871; see *Robinson* v. *State Personnel Bd.* (1979) 97 Cal.App.3d 994, 1004 [159 Cal.Rptr. 222].)

### A

Plaintiff first claims the Board erred by concluding he neglected his duty to inform his supervisor of a drunk driving arrest. Plaintiff claims this conclusion by the Board is unsupported by its findings. Plaintiff's contention is easily disposed of because the Board drew no such conclusion.

The Board did not conclude plaintiff failed to report an *arrest*; it concluded he neglected his duty by failing to report his two *convictions* and his *license suspension*. The Board found plaintiff's job specification required him to possess a valid California driver's license and required him periodically to operate motor vehicles. Plaintiff's license suspension obviously impaired his ability to perform his required functions. It was plaintiff's failure to inform his supervisors he could not lawfully fulfill his duties which constituted a neglect of duty.

Plaintiff contends no law or Department regulation required him to inform his supervisors he could not lawfully perform his duties. Plaintiff claims he cannot be faulted for not doing what no law or regulations required him to do.

In *Orlandi* v. *State Personnel Bd.* (1968) 263 Cal.App.2d 32 [69 Cal.Rptr. 177], this court rejected a similar contention by an officer of the State Highway Patrol who claimed he could not be disciplined for "fixing a ticket" because no law or regulation proscribed fixing tickets. We said the proscription on fixing tickets was part of a highway patrol officer's general "knowledge, without being told . . . ." (P. 40.) We think an employee should know, without being told, that if he is unable lawfully to perform his duties he should so inform his supervisors. We find no error.

## B

Plaintiff next contends the Board concluded he drove a vehicle during the six months his license was suspended. Plaintiff claims this conclusion is unsupported by a finding in the record. Once again, plaintiff misconstrues what the Board did.

The Board stated, "[Plaintiff's] story that for the six months he had his license suspended he did not operate a State motor vehicle is difficult to believe. *But taking it as true does not exonerate him from notifying his superiors of the suspension.*" (Italics added.) Thus, the Board did not conclude plaintiff drove a vehicle during the period of his license suspension; in fact, it assumed *arguendo* he did not. We find no error.

## C

Plaintiff also contends the Board's conclusion his use of PCP constitutes a failure of good behavior is not supported by the findings. In part I, *ante,* we concluded the Board properly found plaintiff's PCP use was voluntary. A finding of voluntary use is sufficient to support a conclusion of failure of good behavior. (See *Parker* v. *State Personnel Bd., supra,* 120 Cal.App.3d at pp. 87-88.) There was no error.

## III

Plaintiff next contends the Board impermissibly shifted the burden of proof to him to show he had no specific intent to use PCP. He claims the trial court compounded the Board's error by determining it was his burden to establish his affirmative defense of unwitting use. The contention is wholly without merit.

As plaintiff properly notes, in administrative disciplinary proceedings the burden of proof rests on the party bringing the charges. (*Martin* v. *State Personnel Bd., supra,* 26 Cal.App.3d at p. 582.) Thus, the Department bore the burden to show plaintiff's use of PCP was voluntary.

Plaintiff's argument (wholly unsupported by citations to the record) mistakenly assumes the Department was never required to meet its burden to show voluntary use. As we have noted in part I, *ante,* the Department presented substantial evidence of voluntary use and thus fulfilled its burden. Plaintiff, in response, bore only the burden of production to establish his affirmative defense of *involuntary* use. Plaintiff concedes he properly faced that burden. We find no error.

## IV

◼ Plaintiff next contends the term "failure of good behavior" as used in Government Code section 19572, subdivision (t), is unconstitutionally vague. In *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507 [102 Cal.Rptr. 758, 498 P.2d 1006] our Supreme Court rejected this very contention. (Pp. 511-514.) The court also rejected the contention the employee's misconduct must be known to the public in order to cause "discredit to his agency or his employment" within the meaning of the subdivision. (*Id.*, at p. 513.) These rulings are binding on this court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

## V

◼ Plaintiff contends the hearing at which Trujillo's testimony was taken was not fairly conducted. As plaintiff notes, Stockton police officers and investigators were present in the hearing room before the hearing began. The ALJ asked them to leave and they did, but after the hearing concluded they arrested Trujillo as he exited the hearing room.

Plaintiff does not contend the presence of the police officers intimidated Trujillo into testifying differently than he would have in their absence. It is fanciful to conclude the ALJ might have decided the case differently had the officers not been present. It was the myriad contradictions in plaintiff's and Trujillo's testimony as noted above, not the presence of the officers, that led the Board to find Trujillo's testimony unbelievable. (See *Holbrook* v. *Flynn* (1986) — U.S. — [89 L.Ed.2d 525, 106 S.Ct. 1340].)

Assuming, arguendo, the officers' presence was improper it is not reasonably probable on this record a determination more favorable to plaintiff would have resulted in their absence. We find no prejudicial error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## VI

◼ Plaintiff lastly contends the Board's penalty of dismissal is so excessive as to constitute an abuse of discretion. We disagree.

The penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated. (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306]; *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 217.) Neither an appellate court nor a trial court is free to substitute its discretion

for that of the administrative agency concerning the degree of punishment imposed. (*Barber, supra,* at p. 404; *Nightingale* v. *State Personnel Board, supra,* 7 Cal.3d at p. 515.)

In *Parker* v. *State Personnel Bd., supra,* 120 Cal.App.3d 84 this court affirmed the dismissal of a group supervisor at DeWitt Nelson Training Center who had possessed a large quantity of marijuana. We noted that "Substantial evidence and common sense would support the judgment simply on the basis of the irreconcilability of plaintiff's behavior and his job." (P. 88.) In *Barber* v. *State Personnel Bd., supra,* 18 Cal.3d 395 our Supreme Court affirmed the dismissal of a counselor at a correctional institution for youthful offenders noting "the strong governmental interest in maintaining high standards of public service and conduct . . . ." (P. 404.) In *Hooks* v. *State Personnel Bd.* (1980) 111 Cal.App.3d 572 [168 Cal.Rptr. 822] the court affirmed dismissal of a correctional officer at California Men's Colony at San Luis Obispo who possessed marijuana and hashish. (P. 579.) We cannot say the penalty of dismissal was clearly excessive. There was no abuse of discretion. (*Barber* v. *State Personnel Bd., supra,* 18 Cal.3d at p. 404; *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 217.)

### DISPOSITION

The judgment is affirmed.

Evans, Acting P. J., and Sparks, J., concurred.