Filed 4/15/14  Johnson v. State Personnel Board CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ERIC JOHNSON, | C066333 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2009-80000347-CU-WM-GDS) |
| v. | |
| STATE PERSONNEL BOARD, | |
| Defendant; | |
| CALIFORNIA HIGHWAY PATROL, | |
| Real Party in Interest and Respondent. | |

While off duty, plaintiff, former California Highway Patrol (CHP) Officer Eric Johnson, transported his wife home from the scene of a solo vehicle accident, before investigating officers arrived, while suspecting at the time she was under the influence. When he returned to the scene without his wife and spoke with fellow officers, he claimed he did not know where his wife was, and he disputed a witness's identification of

1

him as the person who took his wife away. The CHP dismissed plaintiff from his employment for inexcusable neglect of duty, dishonesty, and other failure of good behavior while off duty that caused discredit to the CHP or his employment. Plaintiff challenged his dismissal as excessive discipline, but the State Personnel Board (the Board) sustained the termination, and the trial court denied plaintiff's petition for writ relief.

Plaintiff appeals from the trial court's judgment. He contends, first, that sufficient evidence does not support the Board's statutory grounds for his discipline. In this regard, he claims there was no evidence he committed inexcusable neglect of duty. Second, plaintiff contends the Board exceeded its discretion by imposing a penalty of dismissal for his conduct. On this point, he argues the Board abused its discretion by concluding dismissal was justified (A) based on the possibility a district attorney might have to disclose plaintiff's conduct under *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215] (*Brady*), and (B) without properly assessing the factors it was to consider when determining a penalty, as set forth in *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 (*Skelly*).

We disagree with plaintiff's contentions and affirm the trial court's judgment.

FACTS

Plaintiff became a CHP officer in 1988. Prior to this matter, he had not been subject to any adverse employment actions. His wife, Christina Johnson, struggles with alcoholism, depression, and other medical illnesses. Oakdale police have responded to plaintiff's residence on numerous occasions on account of Christina's behavior, including three times for her attempting to harm herself and once for her battering her husband.

On November 22, 2006, at 12:50 a.m., approximately one week after she had been taken into protective custody for attempting to harm herself, plaintiff's wife was involved in a solo vehicle accident. David Pell came upon the scene and reported the incident to the police. Mrs. Johnson was slurring her words and was staggering. She identified

2

herself to Pell as plaintiff's wife and gave him her driver's license. She called plaintiff, who was at home and off duty. She told him she had wrecked the vehicle and asked him to come help her. He asked her to determine her location and call him back. She called him back and handed the phone to Pell, who told plaintiff their location. Plaintiff told Pell he was an employee of the CHP and was coming to the scene. Plaintiff also told Pell not to call the police, and that he would take care of it.

Minutes later, plaintiff arrived at the scene of the collision in his personal vehicle, a white Chevrolet pickup truck. When he arrived, he quickly took his wife and told her, "Come on, let's go, they're almost here. They'll be here shortly." He told Pell to tell the responding officers to tow the vehicle. He helped his wife into the truck, ran around the front of the truck, jumped in, and drove off. Plaintiff drove his wife home, despite knowing she had possibly been driving under the influence. He smelled alcohol on her.[1]

Plaintiff knew the responding officers would want to speak with his wife, but he wanted to get her home so she could relax and become calm. He was trying to control the situation and her response. At home, he advised his wife to sit down. He was going to go back to the scene and take care of the vehicle. He continued to smell alcohol on her.

CHP Officers Eldon Sousa and Kurt Kusick were dispatched to the accident. Prior to arriving, Sousa was informed plaintiff's wife was the driver and that plaintiff was on his way to the scene. Sousa and plaintiff had been CHP partners at one time for over

---

[1]     Plaintiff testified that when he arrived on the scene, his wife and Pell were arguing. He yelled at his wife to "get [her] ass in the fucking truck." After his wife got in the truck, she broke down crying. He told her to relax and he would be right back. He spoke with Pell about the accident. He told Pell he was a CHP officer and that he worked with the officers who would be responding to the scene of the accident. He told Pell to instruct the officers to have the car towed. Plaintiff told Pell that the officers had his cell phone number and could call him. He told Pell he was taking his wife home.

three years. Because of that relationship, Sousa asked Kusick to take the lead on the investigation, and he would draw a diagram if needed.

When the CHP officers and other emergency and law enforcement personnel arrived at the scene, they found a Jeep that had crashed into a wooden utility pole. They were unable to locate plaintiff's wife. Pell told them someone had come and picked her up. They located her identification in the vehicle.

Plaintiff arrived back on the scene about five minutes after the CHP officers had arrived. Pell recognized plaintiff's white pickup, and he told Officer Kusick it looked like the pickup that had picked up the driver. As plaintiff exited the pickup, Pell said plaintiff was the person who had picked up the driver.

After arriving, plaintiff told Officer Sousa, "I'm going to take care of this, I'm going to knock her out." Plaintiff asked Sousa who else was aware of the incident. Sousa said a lot of people were aware of it. Plaintiff asked him if the witness was still there and what he had said. Sousa told him Pell had said plaintiff had been there earlier in his pickup and had picked up the driver.

Plaintiff told Officer Sousa he did not know the whereabouts of his wife. Plaintiff said "his official answer was that he had not been there before and he didn't know where [his wife] was at." Officer Sousa told plaintiff Pell had identified plaintiff and his pickup as the person and vehicle that picked up the driver. Plaintiff replied that his wife had a lot of friends who had the same type and color of vehicle as him. Officer Kusick testified plaintiff said in effect that "a lot of people drive white pickups around here." During the entire collision investigation that night, plaintiff did not inform either Officer Sousa or Officer Kusick he had already transported his wife home.

After the CHP officers talked with each other, they informed Pell they would take care of the situation, everything was under control, and he could leave. Pell believed the officers were going to cover up the incident, so he notified the Oakdale Police Department and the CHP's Modesto office about it.

4

The CHP launched a criminal investigation into plaintiff's actions. On October 3, 2007, the CHP terminated plaintiff's employment. It dismissed him on the grounds his behavior the night of the accident constituted inexcusable neglect of duty, dishonesty, and other failure of good behavior while off duty that caused discredit to the CHP or his employment. (Gov. Code, § 19572, subds. (d), (f) & (t).)

By letter dated April 18, 2008, some six months after plaintiff's dismissal, the Stanislaus County District Attorney informed the CHP she would not initiate criminal charges against plaintiff because the statute of limitations had expired. However, she had concluded plaintiff had been untruthful during an official investigation, and, as a result, her office was mandated under *Brady, supra,* 373 U.S. 83, to disclose this information to the defense in any ongoing cases in which plaintiff was a material witness. Her office also required corroboration of plaintiff in any new case referred for prosecution where he was a material witness. Without corroboration, her office would not prosecute the case.

PROCEDURAL HISTORY

Plaintiff appealed his dismissal to the Board. The Board, adopting the administrative law judge's decision, found that plaintiff's transportation of his wife from the accident scene and his failure to advise CHP officers of her whereabouts constituted inexcusable neglect of duty, dishonesty, and the failure of good behavior. It determined plaintiff's misconduct caused serious harm to the public service by interfering with an investigation into a possible criminal violation and placing personal considerations before the public's protection. Plaintiff discredited the CHP in the eyes of a member of the public, who believed the CHP engaged in a cover-up at the accident scene. He placed his fellow officers in a compromising position, inviting them to cover up his misconduct.

In addition, plaintiff's conduct had limited his usefulness as a CHP officer. Because plaintiff had been dishonest, he would be subject to impeachment in a court of law regarding his CHP duties if called to testify. The Board mentioned the District

5

Attorney's notice of her intention not to prosecute a case where plaintiff was a material witness unless his testimony could be corroborated.

The Board noted plaintiff's misconduct was not likely to recur, and that his actions were caused by a desire to protect his wife. However, plaintiff's "misconduct involved intentional, conscious deception over an appreciable period of time. After he dropped [his wife] off at their house and returned to the scene, he could have acknowledged his misconduct, but he failed to do so. . . . [¶] Peace officers . . . are held to a higher standard of behavior. [Citation.]" It found dismissal was warranted.

Plaintiff petitioned the Board for rehearing. The Board granted the petition, entertained additional arguments, and then again affirmed plaintiff's termination of employment.

Plaintiff filed a petition for writ of mandate in the trial court, claiming the Board abused its discretion and imposed an excessive discipline. The trial court denied the petition. It found the Board did not abuse its discretion affirming plaintiff's dismissal, as substantial evidence supported the Board's findings. Plaintiff's breaches of his official duty caused serious harm to the public service, discrediting the integrity and operation of the CHP. His dishonesty also subjected him to impeachment under *Brady*, restricting the District Attorney's prosecution of cases and his ability to fulfill an important duty of his job. Despite plaintiff's prior good record and his intent to protect his wife, the court found the penalty of dismissal was not manifestly disproportionate to the seriousness of the harm to the public service and plaintiff's ability to perform his duties.

Plaintiff timely appealed from the trial court's judgment.

ANALYSIS

I

*Substantial Evidence Supporting the Findings of Fact*

Plaintiff's contends substantial evidence does not support the Board's findings of fact. However he challenges only one finding. He claims no evidence supports the

6

Board's finding he committed inexcusable neglect of duty.  (Gov. Code, § 19572, subd. (d).)  He does not challenge the Board's findings that he was dishonest and his actions constituted other failure of good behavior while off duty that caused discredit to the CHP or his employment.  (Gov. Code, § 19572, subds. (f) & (t).)  We thus affirm the latter two findings on the basis of forfeiture, and we address, and ultimately affirm, the first finding.

Our scope of review on appeal from a judgment affirming a Board decision is identical to that of the trial court.  (*California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 584.)  Decisions of the Board are reviewed "only to determine whether substantial evidence supports the determination, even when vested rights are involved.  [Citations.]" (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125-1126.)  " 'The State Personnel Board is an agency with adjudicatory powers created by the California Constitution.' [Citation.]  As such the Board acts much as a trial court would in an ordinary judicial proceeding.  Thus, the Board makes factual findings and exercises discretion on matters within its jurisdiction.  On review the decisions of the Board are entitled to judicial deference.  The record must be viewed in a light most favorable to the decision of the Board and its factual findings must be upheld if they are supported by substantial evidence.  [Citation.]" (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 823-824.)

Plaintiff asserts no evidence supports the finding he committed inexcusable neglect of duty.  He contends because he was off-duty the night of the incident, was not wearing a uniform, and did not flash his badge or use any inherent authority of his position when he took his wife home, he cannot be found to have neglected his duty.  We disagree.

The Board defines "inexcusable neglect of duty" under Government Code section 19572, subdivision (d), to be "the intentional or grossly negligent failure to exercise due

7

diligence in the performance of a known official duty." (*In the Matter of the Appeal by E.W.* (1999) SPB Case No. 98-2130, Dec. No. 90-09 <http://spb.ca.gov/content/precedential/99-09%20W_E.pdf>, at p. 19, fn. omitted.) CHP General Order 0.8 imposes on all CHP employees a duty to adhere to certain professional values in order to maintain the department's professionalism and integrity. Those values include:

"Honesty[:] Uphold the truth, and maintain the trust and confidence placed upon [the CHP] by the citizens of California.

"Professionalism[:] Constantly strive for quality and excellence.

"Principles[:] Adhere to the highest conduct which promotes moral and ethical ideals.

"Respect[:] Display a positive and service-oriented attitude towards the public and each other.

"Integrity[:] Be honorable, open, and fair; this is the cornerstone of [the CHP's] profession."

Substantial evidence indicates plaintiff failed, intentionally or with gross negligence, to exercise due diligence in fulfilling these duties of professional responsibility. He used his official position against Pell and directed him not to call the police about the accident. He removed a suspect from a potential crime scene before investigating officers arrived. When he returned, he did not bring the suspect, he misrepresented her location, and he denied being the person who had removed her from the scene. At the hearing, plaintiff acknowledged his actions were not consistent with the duties imposed by CHP General Order 0.8. These actions demonstrate plaintiff violated his duties of professional responsibility and more than adequately support the Board's determination that he committed inexcusable neglect of duty.

## II

### *Abuse of Discretion in Imposing Dismissal*

Plaintiff contends the Board abused its discretion when it affirmed the CHP's decision to dismiss him from his employment as the penalty for his misconduct. He claims the Board erred by relying on the District Attorney's letter announcing she would disclose his actions under *Brady* and require corroboration for his testimony. He also asserts the Board erred by not properly assessing factors required by *Skelly* before imposing discipline. We disagree with plaintiff's contentions.

"Generally speaking, '[in] a mandamus proceeding to review an administrative order, the determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its discretion.' [Citations.]" (*Skelly, supra*, 15 Cal.3d at p. 217.) "Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed. [Citations.]" (*Constancio v. State Personnel Bd*. (1986) 179 Cal.App.3d 980, 990-991.) We will not disturb the penalty imposed by the Board unless we find it was "clearly excessive." (*Id*. at p. 991.)

### A.     Brady *notice*

Plaintiff argues the Board abused its discretion by relying on the District Attorney's notice that she would disclose his dishonesty under *Brady* in any case in which plaintiff was a material witness as a ground for dismissing him. Plaintiff claims this evidence is insufficient to sustain his dismissal because the CHP does not have a policy prohibiting officers who are subject to *Brady* disclosure requirements from being employed, and because the CHP did not in fact dismiss plaintiff for that reason.

Plaintiff also argues the letter was hearsay. Although plaintiff objected to the letter on that basis, the administrative law judge admitted it for the limited purpose of showing the impact it had on the CHP. Plaintiff claims the letter should not have been

9

admitted for that purpose, as it had no impact on the CHP's decision. The CHP had already dismissed plaintiff months before it received the letter.

Both the Board and the trial court relied upon the District Attorney's notice as a basis for affirming plaintiff's dismissal. They did not abuse their discretion in doing so because the letter was admissible. First, it was not hearsay because it was not admitted for the truth of its assertions. Evidence that would be admissible over objection in civil court proceedings is admissible to support a finding in administrative hearings. (Gov. Code, § 11513, subd. (d).) The letter was admitted to show the CHP's reaction to it. Kenneth Hill, Assistant Chief of the CHP, testified that as a result of the letter, the CHP, if plaintiff were returned to employment, would have to ensure plaintiff's observations were always corroborated. For this purpose, the letter was not hearsay.

Second, the letter was relevant to determine the appropriate penalty. As discussed below, the primary consideration in determining an employment discipline is the extent to which the employee's conduct resulted in harm to the public service. (*Skelly, supra,* 15 Cal.3d at pp. 217-218.) The letter, and the CHP's reaction to it, corroborated the CHP's earlier conclusion that plaintiff's conduct had severely harmed the public service. Indeed, Assistant Chief Hill testified an officer in plaintiff's position was rendered ineffective and unable to perform the full course of his duties unless his actions were corroborated by another person, something that is not always a likely scenario. The letter was relevant to this issue. It confirmed the validity of the CHP's earlier conclusions.

Plaintiff argues the letter was insufficient to justify his dismissal because the CHP does not have a policy preventing officers subject to *Brady* disclosure from serving, and the CHP did not rely upon the letter as a basis for his dismissal. These points are irrelevant. The letter was admitted to show its effect on the CHP if plaintiff was reinstated to employment and the resulting harm to the public service, not as part of the record on which the CHP relied when it decided to dismiss plaintiff.

In addition, the letter was not the only basis on which the Board affirmed plaintiff's dismissal. The CHP's response to the letter was just one factor among many on which the Board relied. The Board did not abuse its discretion in relying on the letter for its limited purpose.

B.     *Assessment of* Skelly *factors*

Plaintiff contends the Board did not assess all of the relevant factors necessary for deciding upon his dismissal. Specifically, he claims the Board did not consider all of the circumstances surrounding his misconduct (his wife's personal problems and his motive to help her), and the likelihood the misconduct would not happen again. We disagree with his contention. The Board did consider all of the relevant factors; it just did not give them the weight plaintiff does.

"[W]hile the administrative body has a broad discretion in respect to the imposition of a penalty or discipline, 'it does not have absolute and unlimited power. It is bound to exercise legal discretion, which is, in the circumstances, judicial discretion.' [Citations.] In considering whether such abuse occurred in the context of public employee discipline, we note that the overriding consideration in these cases is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[harm] to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence. [Citation.]" (*Skelly, supra,* 15 Cal.3d at pp. 217-218.)

The Board adequately considered each of these factors and did not abuse its discretion in its assessment of them. The Board assessed the effect plaintiff's misconduct had on the public service, and it concluded the effect was severe. It found plaintiff had "interfered with an investigation into a possible criminal violation, and in doing so, placed personal considerations before the protection of the public. He discredited the CHP in the eyes of Pell, a member of the public, who believed that the CHP engaged in a cover-up at the scene of an accident, and in the eyes of the allied law enforcement

11

officers who were present at the accident scene.  He placed his fellow officers in a compromising position, tacitly inviting their participation in a 'Code of Silence' to cover up his misconduct."  The Board also found plaintiff's usefulness as a CHP officer had been substantially compromised, another negative effect on the public service, because the CHP would have to ensure his actions were corroborated if he was reinstated.

The Board also considered all of the circumstances surrounding the incident plaintiff wanted it to consider.  It noted plaintiff's actions were "caused by a desire to protect his wife, a basic, understandable motivation."  The Board also recognized the misconduct was not likely to recur.  It stated plaintiff "was an excellent officer and an asset to the CHP. . . .  [E]ven if a similar situation occurred, it is believed that [plaintiff] would uphold his CHP duties."

Nevertheless, the Board did not abuse its discretion when it determined these interests were outweighed by the effect plaintiff's misconduct had on the public service.  "[Plaintiff's] misconduct involved intentional, conscious deception over an appreciable period of time.  After he dropped Christina off at their house and returned to the scene, he could have acknowledged his misconduct, but he failed to do so. . . .  [¶]  Peace officers . . . are held to a higher standard of behavior.  [Citation.]  Given the discredit this incident caused the CHP, the serious harm to the public, and the ongoing impact [plaintiff's] dishonesty would have on his ability to fulfill the duties of his position, dismissal is warranted."

Even plaintiff admitted his misconduct violated his duties and seriously harmed the public service.  Reviewing his actions, plaintiff testified:  "When I look back at it from an officer's point of view, I took someone away from the scene of an accident that I shouldn't have, that had had alcohol on her breath, and had taken some medication.  I should have stayed at the scene, or removed her back from the scene aways [*sic*] so that her and Pell [*sic*] would not argue anymore and she'd stay calm until the officers arrived.

"My actions not only affected my job, but it affected the jobs of the officers. A good friend of mine, [Officer] Sousa, his job, the whole Department, as far as the whole, I affected that by my actions that night. I regret wholeheartedly what I did. I did not do it that night to create this problem. I did it on an emotional basis, of how upset and confused I was over my relationship personally away from the job.

"That night, my job didn't even come into my mind. I was more concerned with fixing something that I could not fix, do something to make something go away, or to help in the process of getting it resolved when it's not my duty to do that. My duty is to be, again, a witness to not only an incident but to be what I was at the time, a good Highway Patrol officer."

In light of this evidence, we cannot say the Board abused its discretion or imposed a clearly excessive penalty when it affirmed plaintiff's dismissal. It sufficiently considered and assessed all factors relevant to making its decision, and substantial evidence supports its findings. We thus affirm its decision.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to real party in interest CHP. (Cal. Rules of Court, rule 8.278(a).)

                                             NICHOLSON     , J.

We concur:

     BLEASE          , Acting P. J.

     MURRAY         , J.